THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS BROWN RUDD, District Attorney of Oneida County, Relator, *v.* MICHAEL RIZZO, " JANE " RIZZO, His Wife (the Name " Jane " Being Fictitious), and Others, Defendants.

Supreme Court, Oneida County, February 28, 1933.

*Thomas Brown Rudd, District Attorney [Earl Bastow, Assistant District Attorney, of counsel], for the relator.*

*William R. Goldbas,* for the defendant Michael Rizzo.

LEWIS, EDMUND H., J. The district attorney of Oneida county brings this action under article 17-A of the Public Health Law to enjoin the defendants from using or permitting the use of certain premises known as 3 Lee street, Utica, N. Y., as a house of prostitution. Under authority of the statute the action is also against the real property itself and the furniture and certain personal property therein. Accordingly the complaint seeks a judgment which, with other relief, would direct the sheriff of Oneida county to effectually close the building against its use for any purpose for one year unless sooner released as provided by law. (Pub. Health Law, § 343-g.)

The summons and complaint with a notice of pendency were filed in the Oneida county clerk's office December 27, 1932. Service was made upon the defendant Michael Rizzo December 31, 1932, and upon Leo Spadafora on January 2, 1933. The remaining defendant, " Jane " Spadafora, was not served. The defendant Rizzo served an answer and has appeared by counsel in defense of he action. The defendant Leo Spadafora defaulted.

The defendant Rizzo bought the premises in question October 5, 1932, from the defendant Spadafora who had then owned the property for a period of eighteen days. The purchase price is said

to have been $5,000, of which only $500 was paid. The balance of $4,500, due from Spadafora to Rizzo, was not secured by a bond and mortgage nor was there given any other written evidence of debt. Spadafora testified that Rizzo was to give him " whatever he could give " each month, but he has made no further payments whatever upon the purchase price.

If the further testimony of Spadafora is to be believed, after he conveyed to Rizzo he rented the premises for the months of November and December, 1932, for the monthly cash rental of $45, paid to the defendant Rizzo over a period of time when Rizzo's total investment in the property was only $500, and he owed Spadafora $4,500, unsecured balance upon the purchase price.

In reaching a determination of the case we can narrow our consideration to the merits, if any, of the defendant Rizzo's defense. He does not deny his small cash investment in the premises nor his debt of $4,500 to Spadafora, incurred at the time of his acquisition of the property October 5, 1932. He admits that thereafter, while Spadafora was in possession of the premises as his tenant, the place was visited by police officers of Oneida county on several occasions; that arrests were made; that Spadafora pleaded guilty to the charge of maintaining a disorderly house in the premises and that several women pleaded guilty of being inmates thereof.

The defendant Rizzo contends, however, by way of defense of this action, that the record contains no proof of knowledge on his part that a nuisance was being maintained on the premises in question prior to October 5, 1932, or that he permitted a continuance of such nuisance thereafter.

It would probably be sufficient answer to the defendant's position to point out that the same defenses were interposed in *People ex rel. Lemon* v. *Elmore* (256 N. Y. 489), and argued before the Court of Appeals in practically identical form and substance. The court dismissed these defenses and sustained the judgment entered against the defendant in that case.

However, I shall consider upon their merits the arguments presented by the defendant Rizzo. In doing so there must be constantly held in mind the fact that by article 17-A of the Public Health Law the Legislature has carefully defined the particular form of nuisance which it intended to abate and has charted a definite course to be followed by this court in the trial of actions thereby authorized. Accordingly we are not only concerned with the rules applicable to nuisance under the common law but more particularly with those rules fixed by the Legislature pertaining to the trial of a statutory nuisance.

The statute under which this action is brought is article 17-A

of the Public Health Law (Laws of 1927, chap. 670) which first defines the nuisance which the statute is intended to abate:

" § 343-a. Houses of prostitution; equipment; nuisance; injunction. Whoever shall erect, establish, continue, maintain, use, own or lease any building, erection, or place used for the purpose of lewdness, assignation, or prostitution is guilty of a nuisance, and the building, erection, or place, or the ground itself, in or upon which such lewdness, assignation, or prostitution is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, musical instruments, and movable property used in conducting or maintaining such nuisance, are also declared a nuisance and shall be enjoined and abated as hereinafter provided."

Then follows the authorization for the type of action at bar:

" § 343-b. Injunction; procedure. When a nuisance is kept, maintained, or exists, as defined in this chapter, the district attorney, or any citizen of the county, or any society, association, or body incorporated under the laws of this state, may maintain an action in equity in the name of the people of the state of New York, upon the relation of such district attorney, citizen, or corporation to perpetually enjoin said nuisance, the person or persons conducting or maintaining the same from further conducting or maintaining the same, and the owner, or agent of the building or ground upon which said nuisance exists, from further permitting such building or ground or both to be so used."

Without further reference to the various succeeding statutory provisions which give in detail the procedure to be followed in this type of action we come at once to that section which establishes four definite rules to be followed by this court in its consideration of the proof. As these rules of evidence have an important and direct bearing upon the defendant's defense they are quoted in part below:

" § 341-i. Trial of action. * * * In such action evidence of the common fame and general reputation of the place, of the inmates or occupants thereof, or of those resorting thereto, shall be competent evidence to prove the existence of the nuisance.

" An admission or finding of guilt of any person of a violation of section eleven hundred forty-six of the Penal Law [keeping a disorderly house] at such place shall be presumptive evidence of the nuisance; and a plea of guilty or a conviction in a criminal action of maintaining a nuisance at the place described in the complaint shall be *prima facie* evidence of the nuisance, and the records of any court in the jurisdiction shall be admissible as evidence to prove the conviction or plea of guilty. If evidence of the general reputation of the place, or of the inmates or occupants thereof, is

sufficient to establish the existence of a nuisance it shall be *prima facie* evidence of knowledge thereof and acquiescence and participation therein and responsibility for the nuisance, on the part of the owners, lessors, lessees, users, and all those in possession of or having charge of, as agent or otherwise, or having any interest in any form of property, real or personal, used in conducting or maintaining said nuisance."

Bearing in mind these rules of evidence, which in this instance are statutory and accordingly mandatory, we find the following uncontradicted proof of record in the case:

As to the facilities which the premises in question afford: The property commonly known as 3 Lee street in the city of Utica, N. Y., comprises a two-story frame building, the lower floor of which is occupied by a bar-room, sitting room, dining room and kitchen. Upon the second floor, in addition to seven bedrooms and a bathroom, is a small room capable of accommodating six or eight people which is reached from the upper hall by means of a door so fitted into a panel as to be invisible except when open. There are three entrances and exits on the first floor and one on the second floor by means of a plank which can be used to cross over from the building at 3 Lee street to a building adjacent thereto.

As bearing upon knowledge by the defendant of the use to which the premises in question were put both before and after he purchased the same: The proof is undisputed that during the year 1932 and prior to the date when the defendant Rizzo acquired title to the premises twelve persons were convicted either of being inmates or proprietors of said premises as a disorderly house.

On December 16, 1932, more than two months after the defendant Rizzo acquired title thereto, the premises were visited by police officers of Oneida county, at which time the defendant Spadafora and two women were arrested, one of the women having been found partly dressed coming from a bedroom in which a man was found under the bed. A week later the defendant Spadafora entered a plea of guilty to the charge of maintaining a disorderly house at these premises and two women entered a plea of guilty of being inmates in the place.

As to the general reputation of 3 Lee street " or of the inmates or occupants thereof " both before and after the defendant acquired title thereto, the arrests and pleas of guilty to which reference is made above are " sufficient to establish the existence of a nuisance." In addition the relator established through the testimony of the probation officer of Oneida county that the common fame and general reputation of 3 Lee street in the year 1932 was bad.

It follows under the statutory rules of evidence, quoted above,

which the court must apply, that "*prima facie* evidence cf knowledge thereof and acquiescence and participation therein and responsibility for the nuisance, on the part of " the defendant Rizzo as owner has been established.

The defendant Rizzo chose not to take the stand as a witness in his own defense. He called as his only witness the defendant Spadafora, who had previously defaulted in this action. Except in those instances where the testimony of Spadafora is supported by documentary proof, I find that his evidence is unworthy of belief.

Upon the record before this court it is clear that the defendant Rizzo has not overcome the presumption which is raised by the statutory rules of evidence mentioned above when those rules are applied to the undisputed proof that the general reputation of the premises in question in 1932 was bad and that during that year, both before and after the defendant Rizzo acquired title thereto, the place had been the abode of prostitutes and had been maintained as a disorderly house.

The defendant Rizzo further claims that when this action was commenced on December 27, 1932, the alleged nuisance had been abated. He claims to have ordered Spadafora from the premises on December 23, 1932, from which time until this action was commenced, four days later, the property was vacant and that it has since remained so. Conceding it to be a fact, such action by the defendant cannot avail him as a defense. Borrowing a phrase from a recent opinion it may be said that defendant's summary ouster of his tenant Spadafora on December 23, 1932, was either " belated repentance or belated caution." (*J. H. & S. Theatres* v. *Fay*, 260 N. Y. 315, 319.) In the *Elmore Case supra*) the defendant had vacated the property there in question a month prior to the date when the action was started, but the Court of Appeals disregarded that fact as a defense.

In *Grosfield* v. *United States* (276 U. S. 494) the Supreme Court was called upon to review a case where the Federal government had instituted an action against the owner of certain property and his tenant to enjoin the use of such property for the manufacture and sale of intoxicating liquors and to close such premises as a common nuisance for the period of one year. Both the owner and tenant filed answers alleging, among other defenses, that they had no knowledge of the existence of the nuisance and that steps were promptly taken to abate the nuisance. Proof was submitted accordingly. The opinion by Mr. Justice SUTHERLAND closes with this statement (at p. 499): " Upon consideration of all the circumstances, we find no ground for disturbing the conclusion upon which

the decree must rest, namely, that the premises ought to be closed for a period long enough to end the probability of a recurrence of their unlawful use. We are the more content with this conclusion, since it is still within the power of the district court to permit the premises to be occupied or used upon the giving of a bond with sufficient surety in the amount and upon the conditions prescribed by the statute."

Mr. Justice SUTHERLAND's statement that " the premises ought to be closed for a period long enough to end the probability of a recurrence of their unlawful use " is peculiarly applicable to the action at bar and in my opinion expresses the clear intent of the Legislature by its enactment of section 343-q of the Public Health Law. That statute provides that, in the event the existence of a nuisance is established, the order of abatement to be entered in the action " shall direct the effectual closing of the building * * * against its use for any purpose * * * for a period of one year, unless sooner released as hereinafter provided."

If the owner is in good faith in his purpose not to again permit the premises to be devoted to an unlawful use the law recognizes such an attitude as follows (Pub. Health Law, § 343-v): If the court is " satisfied of his good faith " the owner may file a bond approved by the court, in an amount equal to the full value of the property conditioned that he will prevent the premises from being put to an illegal use for the period of one year thereafter. Thereupon the premises may be released to the owner.

A careful study of article 17-A of the Public Health Law in its entirety leads me to the conclusion that the Legislature has authorized a proceeding which, if used in the spirit in which it was intended, will effectively put an end to the existence of disorderly houses. It is a judicial proceeding against property devoted to an unlawful use, one of the chief objects of which is the prevention of the continuance or recurrence of such use. The law is clearly in the interest of public welfare, it is effective and fair — three characteristics to be desired in any remedial statute.

The Court of Appeals has reminded us that " The doctrine that personal liberty must yield to what is supposed to be the public welfare has not waned any during recent years." (*People* v. *Klinck Packing Co.*, 214 N. Y. 121, 126.) To the same effect is the statement by Mr. Justice STONE, writing for the United States Supreme Court in *Miller* v. *Schoene* (276 U. S. 272, 280): " And where the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property."

In this action the district attorney of Oneida county, taking advantage of the statute here under consideration, has established the existence of a nuisance in the property owned by the defendant Rizzo at 3 Lee street, Utica, N. Y. The defendant has failed to overcome the presumption of his knowledge of the use to which the property was put both before and after he acquired title.

An order of abatement in the form provided by law may issue, upon proper findings in this action, directing the removal from the building located on the premises described in the complaint herein and commonly known as 3 Lee street, Utica, N. Y., of all fixtures, furniture, musical instruments or movable property used in conducting the nuisance to be abated by said order and directing the sale of such personalty in the manner provided for the sale of chattels under execution; and said order of abatement shall further direct the sheriff of Oneida county to effectually close the building commonly known as 3 Lee street, Utica, N. Y., against its use for any purpose and so keep it closed for a period of one year unless sooner released under provisions of law applicable thereto.

Costs are awarded to the plaintiff against the defendants Michael Rizzo and Leo Spadafora.