THE PEOPLE OF THE STATE OF NEW YORK ex rel. RICHARD J. ARCARA, as District Attorney of Erie County, Respondent, v CLOUD BOOKS, INC., Doing Business as VILLAGE BOOK AND NEWS STORE, Appellant, et al., Defendants.

Fourth Department, April 12, 1984

APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Paul Cambria* and *Mary Good* of counsel), for appellant.

*Richard J. Arcara, District Attorney* (*John DeFranks* and *Louis A. Haremski* of counsel), for respondent.

### OPINION OF THE COURT

MOULE, J.

The question presented on this appeal is whether title II of article 23 of the Public Health Law may be applicable to enjoin a nuisance occurring on a premises used as a bookstore.

Defendant Cloud Books, Inc., operates a bookstore, the Village Books and News, located on Delaware Avenue in the Village of Kenmore.[1] It sells books, magazines and novelties of a sexually frank nature and maintains coin-operated movie machines which show explicit sexual material. An investigation concerning activities occurring on the premises was undertaken by the Erie County District Attorney in September, 1982. This investigation was conducted by an Erie County Sheriff who, while working undercover, visited the bookstore several times between September 13 and October 1, 1982. During this period of time, the undercover officer witnessed numerous lewd and illegal acts committed by unidentified patrons of the premises. In an affidavit describing these acts, the officer stated that he had brought them to the attention of store employees but had been told by the employees that they were not concerned with such action.

Subsequently, the District Attorney brought suit on behalf of the People alleging the foregoing acts and setting forth two causes of action: to abate a nuisance under common law and to enjoin the maintenance of a nuisance in violation of title II of article 23 of the Public Health Law. The ultimate relief sought under both causes of action is a permanent injunction against illicit conduct occurring on the premises. Additionally, under the statutory cause of action, plaintiff seeks closure of the premises for a period of one year and the seizure and sale of all furniture and

---

1. Charles Ottaviano, owner of the premises, is also named as a defendant in this action. All future references to "defendant" will be to defendant Cloud Books, Inc.

fixtures used therein (Public Health Law, §§ 2320 *et seq.*).[2] In its verified answer, defendant, through both its attorney and corporate president, specifically denied each factual allegation regarding the alleged sexual activity and asserted that, even if proven, those acts were not sanctioned or otherwise countenanced by defendant or its employees. Further, defendant stated in its answer that its employees were required to maintain a strictly enforced policy of disallowing any such activity on the premises.

Defendant then moved for partial summary judgment on the statutory cause of action, arguing that the statute was totally inapplicable to a bookstore and, alternatively, that the mandatory closure provisions of the statute would unconstitutionally impinge upon the bookstore's protected First Amendment activities. Special Term rejected both of defendant's arguments against the potential applicability of the statute and denied its motion.[3]

Defendant raises two contentions on this appeal: (1) that title II of article 23 of the Public Health Law is inapplicable to its premises; and (2) that the mandatory closure provisions of article 23 (tit II, § 2329) of the Public Health Law impermissibly infringe upon its First Amendment freedoms.

■ The question presented by the first contention is whether title II of article 23 of the Public Health Law, entitled "Houses of Prostitution: Injunction and Abatement", may be applicable to a bookstore. Section 2320 of the Public Health Law defines the scope of this title:

"1. Whoever shall erect, establish, continue, maintain, use, own, or lease any building, erection, or place used for the purpose of lewdness, assignation, or prostitution is guilty of maintaining a nuisance.

"2. The building, erection, or place, or the ground itself, in or upon which any lewdness, assignation, or prostitution

---

**2.** Plaintiff's complaint also sought a preliminary injunction restraining defendant from maintaining a nuisance in violation of title II of article 23 of the Public Health Law. This application was denied by the trial court and that denial was subsequently affirmed by this court (96 AD2d 751).

**3.** Special Term's order also granted plaintiff's motion for a protective order vacating defendant's notices to take depositions. While defendant appealed from "each and every part" of Special Term's order, no issue has been raised on this appeal with respect to this aspect of the court's order.

is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, musical instruments, and movable property used in conducting or maintaining such nuisance, are hereby declared to be a nuisance and shall be enjoined and abated as hereafter provided."

Defendant argues that the statute is inapplicable to a bookstore since it is not a "place used for the purpose of lewdness, assignation, or prostitution". Defendant further maintains that, because the statute is entitled "Houses of Prostitution", it may only be employed against houses of prostitution. These arguments are without merit.

Defendant's argument that the statute does not apply to a bookstore because it is not a "place used for the purpose of lewdness, assignation, or prostitution" presupposes that the primary use of the subject premises must be connected with the stated illegal activities. No such limitation is, however, provided by the express language of the statute. A premises may have multiple purposes and, if one of those is the promotion of "lewdness, assignation, or prostitution", it will run afoul of section 2320 of the Public Health Law. This interpretation is supported by a consistent reading of the statute's two subdivisions. While subdivision 1 of section 2320 refers to persons "guilty of maintaining a nuisance", subdivision 2 goes on to provide that the building or ground "upon which *any* lewdness, assignation, or prostitution is conducted, permitted, or carried on, continued, or exists" (emphasis added) constitutes a nuisance. If the statute were intended to apply exclusively to houses of prostitution, it is inconceivable that the Legislature would have given such a broad definition to the term "nuisance". As for the title of the act, it is fundamental that the substance of a statute is to be determined by its provisions and not by its title (*Squadrito v Griebsch,* 1 NY2d 471; see, also, McKinney's Cons Laws of NY, Book 1, Statutes, § 13).

While there is little precedent in New York[4] for applying the Public Health Law to premises other than a house of prostitution (*People ex rel. Lemon v Elmore,* 256 NY 489; *People ex rel. Rudd v Rizzo,* 146 Misc 675), similar statutes in three other States have been broadly construed to be

---

4. In *People v Macbeth Realty Co.* (63 AD2d 908), the First Department upheld the application of the statute to certain rooms in a hotel which were used for prostitution (cf. *Commissioner of Dept. of Bldgs. of City of N. Y. v Sidne Enterprises,* 90 Misc 2d 386).

applicable to various premises other than houses of prostitution. In *State ex rel. Carroll v Gatter* (43 Wn 2d 153, 160), the Supreme Court of Washington discussed the general applicability of its red light abatement statute:[5]

"The statute is not directed to the abatement of commercial eroticism — that is governed by the criminal statutes. It is directed to the abatement of premises which, by reason of sufficient happenings therein, have absorbed and taken the character of the acts committed, and have in fact become houses of lewdness, assignation, or prostitution.

"But the operator of such premises cannot escape the force of the abatement statute by calling the premises a 'hotel,' 'apartment,' 'club,' or giving it any name which purports to identify it as a place of lawful and legitimate business; nor can certain immunity be gained by showing mathematically that the principal business of the establishment is legitimate. That fact is one to be considered by the court in reaching its ultimate finding, but is not necessarily, of itself, sufficient to be conclusive. The legitimate and the illegitimate activities occurring on the premises may be so intermingled that the lesser activity is predominant and controls the determination that the premises are, or are not, houses of lewdness, assignation or prostitution."

While the premises involved in the Washington case was a hotel which was alleged to have been used for prostitution, the court's analysis unequivocally implies that the statute could be applied to any premises where a sufficient degree of illegitimate activity transpires.

In *State ex rel. Wayne County Prosecuting Attorney v Levenburg* (406 Mich 455), the Supreme Court of Michigan held that proof of numerous instances of accosting and soliciting for purposes of prostitution at a bar was sufficient to sustain a finding that the bar constituted a nui-

5. The Washington statute was worded almost identically to section 2320 of the Public Health Law. It provided: "Whoever shall erect, establish, maintain, continue, use, own or lease any building or place used for the purpose of lewdness, assignation or prostitution is guilty of a nuisance, and the building or place, or the ground itself, in or upon which lewdness, assignation or prostitution is conducted, permitted or carried on, continued or exists, and the furniture, fixtures, musical instruments, and contents are also declared a nuisance, and shall be enjoined and abated as hereinafter provided" (Wn Rev Code, former § 7.48.050, Wn Rev Stat, § 946-1).

sance under Michigan's abatement act[6] and was, hence, subject to abatement. Finally, in *People ex rel. Van De Kamp v American Art Enterprises* (75 Cal App 3d 523), the Court of Appeal for the Second District of California applied the California Red Light Abatement Law[7] to a premises used for the storage and distribution of certain publications (see, also, *People v Mitchell,* 64 Cal App 3d 336, where the same court found the California act applicable to enjoin lewd acts of theater patrons).

The question of whether any given premises, including defendant's bookstore, is subject to title II of article 23 of the Public Health Law is necessarily a question of fact. Resolution of this question will depend upon the degree of illicit activity which plaintiff can prove occurred at the store. In addressing the People's burden of proof under the Washington statute, the court in *State ex rel. Carroll v Gatter* (43 Wn 2d 153, 160, *supra*) stated: "To sustain the application of the act, it must be shown to the satisfaction of the court, by a preponderance of the evidence, that the premises were being used as a house of lewdness, assignation, or prostitution as that term is generally understood. The 'use' of the premises of which the statute speaks, requires more than a showing that sporadic acts of prostitution occurred therein." We believe that this is an appropriate standard of proof for the People to be held to under the Public Health Law. While it will not be necessary for the People to demonstrate that the sole, or even dominant, use of the premises is devoted to the illegality prohibited in the statute, the People will have to show a consistent pattern of conduct sufficient to prove that the premises are being employed for a proscribed use.

---

**6.** Michigan's act provides in pertinent part: "Any building, vehicle, boat, aircraft or place used for the purpose of lewdness, assignation or prostitution or gambling, or used by, or kept for the use of prostitutes or other disorderly persons * * * is hereby declared a nuisance and * * * shall be enjoined and abated as hereinafter provided, and as provided in the court rules. Any person, or his servant, agent or employee who shall own, lease, conduct or maintain any building, vehicle or place used for any of the purposes or by any of the persons above set forth or where any of the acts above enumerated are conducted, permitted or carried on, is guilty of a nuisance" (Mich Compiled Laws Ann, § 600.3801).

**7.** The relevant portion of California's act provides: "Every building or place used for the purpose of * * * lewdness, assignation, or prostitution, and every building or place in * * * which acts of * * * lewdness, assignation, or prostitution, are held to occur, is a nuisance which shall be enjoined, abated and prevented, whether it is a public or private nuisance" (Cal Penal Code, § 11225).

Defendant's second contention is that, even if title II of article 23 of the Public Health Law may be applicable to a bookstore, its mandatory closure provisions impermissibly infringe upon defendant's First Amendment freedoms. Defendant cites three different arguments in support of this contention: first, that closure of the premises would violate defendant's right to the procedural safeguards of *Freedman v Maryland* (380 US 51); second, that closure would effect a prior restraint on protected speech (see, e.g., *Near v Minnesota,* 283 US 697); and, third, that closure would violate the overbreadth doctrine (see, e.g., *Broadrick v Oklahoma,* 413 US 601).

Defendant correctly maintains that if the mandatory remedy provided under this title, closure of the premises and sale of the fixtures,[8] would be constitutionally infirm when applied to a bookstore, then it would be entitled to summary judgment on the statutory cause of action. There would, of course, be no reason to allow this cause of action to be tried if, as a matter of law, there was no possible basis upon which the People could prevail. This conclusion is supported by our holding in *Cosgrove v Cloud Books* (83 AD2d 789, 789-790), where we held that defendant was entitled to partial summary judgment where the relief sought would be "in clear violation of defendants' First Amendment rights".

Defendant's first argument in support of its second contention is that mandatory closure of the premises would violate the procedural safeguards of *Freedman v Maryland* (*supra*). *Freedman* involved a challenge to a Maryland statute which required that motion pictures be submitted to a film review board for licensing. The object of the statute was to censor obscene films. The court held that

---

**8.** Subdivision 1 of section 2329 of the Public Health Law provides, in pertinent part: "If the existence of the nuisance be admitted or established in an action as provided in this article, or in a criminal proceeding in any court, an order of abatement shall be entered as a part of the judgment in the case, which order shall direct the removal from the building or place of all fixtures, furniture, musical instruments, or movable property used in conducting the nuisance and shall direct the sale of such in the manner provided for the sale of chattels under execution, *and shall direct the effectual closing of the building,* erection or place against its use for any purpose, and so keeping it closed for a period of one year, unless sooner released as hereinafter provided" (emphasis added). Section 2332 of the Public Health Law goes on to provide that the owner of the premises may have the order of abatement canceled upon his paying all costs of the proceeding, filing a bond in the full amount of the property's value, and abating the nuisance.

such a system of content-based censorship could avoid constitutional infirmity only by providing for certain procedural safeguards. Concededly, title II of article 23 of the Public Health Law does not contain any of the procedural safeguards mandated by *Freedman*. This fact is, however, irrelevant since the purpose of this action is to enjoin illegal conduct occurring at the bookstore, not regulate the content of presumptively protected materials distributed by defendant. Since this case concerns conduct and not content, it is readily distinguishable from *Freedman* and the other cases relied upon by defendant (see, e.g., *Vance v Universal Amusement Co.*, 445 US 308; *Cosgrove v Cloud Books, supra*). Accordingly, defendant's first constitutional argument is without merit.

Defendant's second argument in support of its second contention is that closure of the bookstore would operate as a prior restraint on protected speech. To support this argument, it relies upon a long line of cases standing for the proposition that abatement statutes, similar to New York's, may not be employed to prospectively enjoin constitutionally protected conduct because of the past distribution or exhibition of obscene magazines or films (*General Corp. v State ex rel. Sweeton*, 294 Ala 657, cert den 425 US 904; *People ex rel. Busch v Projection Room Theater*, 17 Cal 3d 42, cert den *sub nom. Van de Kamp v Projection Room Theater*, 429 US 922; *Mitchum v State ex rel. Schaub*, 250 So 2d 883 [Fla]; *Sanders v State*, 231 Ga 608; *State v A Motion Picture Entitled "The Bet"*, 219 Kan 65; *Gulf States Theatres of La. v Richardson*, 287 So 2d 480 [La]; *Cosgrove v Cloud Books, supra; State ex rel. Field v Hess*, 540 P2d 1165 [Okla]). Once again, however, the critical distinction between this case and the authorities cited by defendant is the fact that plaintiff's action is directed at illegal conduct occurring on the premises and not at punishing defendant for any past promotion of obscenity. The ultimate question presented by defendant's argument is whether the closure provisions of title II of article 23 of the Public Health Law constitute a prior restraint when that article is applied to enjoin illegal activity occurring at a bookstore, and that activity is wholly unrelated to the dissemination of protected speech.

At the outset, it is necessary to examine what is meant by a prior restraint. In *Near v Minnesota* (283 US 697, *supra*), the United States Supreme Court held that the Constitution prohibited an injunction against the further publication of a racist newspaper. The court found that the statute, which authorized the granting of an injunction against any "malicious, scandalous or defamatory" newspaper, was the essence of censorship. It went on to state: "The question is whether a statute authorizing such proceedings in restraint of publication is consistent with the conception of the liberty of the press as historically conceived and guaranteed. In determining the extent of the constitutional protection, it has been generally, if not universally, considered that it is the chief purpose of the guaranty to prevent previous restraints upon publication. The struggle in England, directed against the legislative power of the licenser, resulted in renunciation of the censorship of the press. The liberty deemed to be established was thus described by Blackstone: 'The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public'" (*Near v Minnesota, supra,* pp 713-714, quoting 4 Blackstone's Comm, p 151). The clear import of this language is that speech may not be restricted because of its content. This principle was reiterated by the Supreme Court in *Police Dept. of Chicago v Mosley* (408 US 92, 95-96) where the court stated: "But, above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content * * * To permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship. The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut the 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.' *New York Times Co.* v. *Sullivan, supra* [376 US 254], at 270."

With these authorities in mind, we conclude that closure of the bookstore pursuant to title II of section 23 of the Public Health Law would not constitute a prior restraint on protected First Amendment speech since the People seek only to employ the statute to enjoin illegal conduct occurring on the premises, not to regulate the content of materials disseminated by the store. The mere fact that illegal activity or conduct occurs on the premises of a bookstore does not elevate every attempt to enforce the law on those premises to a question of constitutional dimension.[9] This conclusion is supported by the Supreme Court's decision in *Paris Adult Theatre I v Slaton* (413 US 49, 67) where the court stated: "Conduct or depictions of conduct that the state police power can prohibit on a public street do not become automatically protected by the Constitution merely because the conduct is moved to a bar or a 'live' theater stage, any more than a 'live' performance of a man and woman locked in a sexual embrace at high noon in Times Square is protected by the Constitution because they simultaneously engage in a valid political dialogue."

In reaching this conclusion, we recognize that another court, the Court of Appeal for the Second District of California, has reached a contrary result. In *People ex rel. Van De Kamp v American Art Enterprises* (75 Cal App 3d 523, *supra*), that court applied the California abatement statute to a building which was primarily used for publishing purposes, but which was also found to be a "nerve center" for arranging hundreds of acts of prostitution. While the court issued an injunction against further illegal activity on the premises, it expressly refused to close the building, the relief requested by the People and provided for by statute (Cal Penal Code, § 11230), on the ground that closure would constitute a prior restraint. The court's holding was based upon the Supreme Court's decision in *United States v O'Brien* (391 US 367, 376-377), where the court stated: "This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in

---

**9.** "By way of example, if a bookseller, having fallen behind on his property taxes, loses his bookstore at a tax sale, he will not be heard to complain that the state has imposed an unlawful prior restraint upon his bookselling activities" (*State ex rel. Kidwell v U. S. Marketing,* 102 Idaho 451, 456).

regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Using the criteria set forth in *O'Brien* (*supra*), the *American Art Enterprises* court found that the "incidental infringement upon First Amendment rights [was] 'greater than [that] essential to vindicate [the government's] * * * interests'" (*People ex rel. Van De Kamp v American Art Enterprises, supra,* p 531). This conclusion rests, however, on an erroneous reading of *O'Brien.*

In *O'Brien* (*supra*), defendant was arrested and convicted for burning his selective service registration certificate. On appeal, defendant argued that his action in burning his registration certificate constituted symbolic speech and that the Federal statutory provision prohibiting this activity impermissibly interfered with his First Amendment right of free speech. Thus, the test formulated by the court in *O'Brien* is applicable only where the Government seeks to regulate the nonexpressive element of conduct in a course of conduct which consists of both "speech" and "nonspeech" elements. Since the conduct at issue in *American Art Enterprises* (*supra*), arranging prostitution, did not involve any element of speech, reliance on *O'Brien* was misplaced. Likewise, the conduct sought to be enjoined by the People in the instant case does not contain any element of speech and, hence, *O'Brien* is inapplicable.

Defendant's final argument in support of its contention that closure of the bookstore would impermissibly infringe on the First Amendment is that closure would be overbroad. "By definition an overbroad statute covers privileged activity, and to the extent that the statutory burden

operates as a disincentive to action the result is an *in terrorem* effect on conduct within the protection of the first amendment. The reason for invalidating a substantially overbroad law is to end its deterrence of constitutionally preferred activity" (Note, The First Amendment Overbreadth Doctrine, 83 Harv L Rev 844, 853; see *Broadrick v Oklahoma,* 413 US 601, *supra; NAACP v Alabama,* 377 US 288). Since the conduct sought to be enjoined in this case is not "constitutionally preferred activity", the overbreadth doctrine is inapplicable.

Special Term's order denying partial summary judgment to the defendant should be affirmed.

GREEN, J. (concurring). I agree that plaintiff has stated a cause of action pursuant to article 23 of the Public Health Law and that defendant's motion for partial summary judgment was properly denied. I write separately, however, to express my concern that we are premature in reaching the constitutional issue relating to the statute's sanctions.

The order appealed from decided only defendant's motion for partial summary judgment. There has been no trial and no verdict from which defendant is aggrieved. Considerations of propriety, as well as long-established practice, demand that we not anticipate a question of constitutional law in advance of the necessity for deciding it, particularly where as here, there is another ground upon which this case may be disposed of (see *Ashwander v Valley Auth.,* 297 US 288, 341-348 [Brandeis, J., concurring opn]). If defendant should prevail at trial, there would be no constitutional issue. If plaintiff should prevail, defendant may move to cancel the order of abatement (Public Health Law, § 2332, subd 1; *People ex rel. Rudd v Rizzo,* 146 Misc 675).

Implicit in this court's prior affirmance of the trial court's denial of plaintiff's motion for a preliminary injunction (96 AD2d 751) was the notion that this case should proceed to trial like any other. We should say no more here.

DILLON, P. J., CALLAHAN and DOERR, JJ., concur with MOULE, J.; GREEN, J., concurs in a separate opinion.

Order affirmed, without costs.