THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. SEQUOIA BOOKS, INC., *et al.*, Defendants-Appellees.

Second District   No. 84—0428

Opinion filed October 31, 1986.

384

Dallas C. Ingemunson, State's Attorney, of Yorkville (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Steve Beckett, of Reno, O'Byrne & Kepley, of Champaign, for appellees.

JUSTICE STROUSE delivered the opinion of the court:

On February 28, 1983, the State filed a complaint against the defendants, Sequoia Books, Inc. (Sequoia), and Bruce and Cathy Riemenschneider, seeking an injunction to prohibit the continued sale of allegedly obscene materials and to close Sequoia's adult bookstore for one year. Sequoia's motion to dismiss the complaint was granted by the trial court.

On June 27, 1983, the State filed a two-count amended complaint against Sequoia, alleged operator of an adult bookstore known as Denmark Bookstore, and Bruce and Cathy Riemenschneider, owners and lessors of the property upon which the bookstore is located. Count I is premised upon common law nuisance grounds. Count II alleges violations which closely parallel section 1 et seq. of "An Act regarding places used for purposes of lewdness, assignation, or prostitution, to declare the same to be public nuisances, and to provide for the more effectual suppression thereof." (Ill. Rev. Stat. 1981, ch. 100½, par. 1 et seq.) Although the statute was not cited within the complaint, the parties pleaded and argued this count as if it were.

Count I sought to enjoin the defendants from the exhibition, sale or offering for sale of allegedly obscene movies, video tapes, books or magazines. Count II sought to enjoin the defendants from operating Denmark Bookstore for one year because defendants allegedly permitted fellatio to occur within the business premises. On July 19, 1983, Sequoia filed a motion to dismiss alleging the complaint failed to state a cause of action because defects existed in both counts. The Riemenschneiders did not join in the motion to dismiss nor did they file an appearance. On March 22, 1984, the trial court entered an order dismissing the complaint on the following grounds: (1) the description of the articles sought to be enjoined did not conform with the

principles expressed in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607; (2) the complaint sought relief which would constitute an invalid prior restraint of the defendants' first amendment rights; (3) the complaint did not allege reasons why criminal prosecution is an inadequate remedy; and (4) there was no allegation that the conduct alleged in count II was performed on a commercial basis.

Thereafter, on April 11, 1984, the State and Sequoia, by stipulation, amended paragraph six of count I to include a listing of the criminal actions filed against Sequoia and its employees. The trial court allowed the amendment to paragraph six and reaffirmed its prior dismissal of the amended complaint. The State claims on appeal that the trial court erred in dismissing the complaint because: (a) the complaint, which alleges a common law nuisance, need not allege the definitional elements of the term "obscene" as expressed in *Miller v. California*; (b) a grant of injunctive relief for a common law nuisance would not constitute an invalid prior restraint; (c) the complaint sufficiently alleges that the criminal law is an inadequate remedy to prevent continuance of a common law nuisance; and (d) statutory public nuisance proceedings may be allowed where the complaint alleges that the defendants permitted fellatio within the bookstore.

■■ ■ Initially, it is important to keep in mind the purpose and scope of the well-settled principles of law that control the dismissal of a complaint for failure to state a cause of action. A motion to dismiss admits for purposes of review such facts as are well pleaded; it does not admit conclusions of law, the pleader's construction of a statute, or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. A complaint should not be dismissed unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the pleader to relief. (*Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 578-79.) An appeal from an order dismissing such a motion preserves for review only a question of law as to the complaint's legal sufficiency. (*Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333, 334.) The factual allegations of a complaint are assumed to be true. *Collier v. Wagner Castings Co.* (1980), 81 Ill. 2d 229, 232.

■■ The first contention raised under the State's assignment of error is that count I need not allege the definitional elements of the term "obscene" in order to be legally sufficient. Specifically, the State asserts that the complaint's allegation in count I, paragraph 5, that "the aforedescribed depictions are obscene" satisfies pleading requirements for common law nuisance when considered with the detailed

description of the acts in paragraph 4, and thus a detailed recitation in the pleadings of the definition of "obscene" is unnecessary. Defendant argues that the complaint's dismissal was proper because the complaint failed to allege the three-part test enunciated in *Miller v. California* (1973), 413 U.S. 15, 37 L. Ed. 2d 419, 93 S. Ct. 2607.

Depictions of sexual activity may be considered "obscene" when those depictions meet the following three requirements:

"(a) *** 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, [citations]; (b) *** the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) *** the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. California* (1973), 413 U.S. 15, 24, 37 L. Ed. 2d 419, 431, 93 S. Ct. 2607, 2615; see also *Ward v. Illinois* (1977), 431 U.S. 767, 768-69, 52 L. Ed. 2d 738, 743, 97 S. Ct. 2085, 2087, *aff'g* (1976), 63 Ill. 2d 437, 439-40; *People v. Ridens* (1974), 59 Ill. 2d 362, 366-67.

We do not agree that the common law nuisance count is defective by its failure to allege the definitional elements of obscenity. We have previously held that such definitional language constitutes surplusage, as the Illinois obscenity statute, itself, defines the meaning of obscenity. (*People v. Bailey* (1984), 125 Ill. App. 3d 346, 348-49.) Although *Bailey* involved the dismissal of a complaint charging the accused with the offense of obscenity pursuant to section 11—20(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 11—20(a)(1)), and the complaint herein charged the defendants with common law nuisance violations, this distinction does not mandate another result in the present case. Moreover, our supreme court has held that the vagueness difficulty of obscenity in a common law nuisance action is to be restricted to the definition of obscenity in the criminal obscenity statute as judicially construed, which has been recognized as satisfying constitutional requirements. *City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 306-07; see also *People v. Ridens* (1974), 59 Ill. 2d 362.

■ The State next claims that the trial judge erred by finding the injunction prayed for would operate as a prior restraint. In this case an injunction was never entered, and we, therefore, need not consider the question of prior restraint.

We note, however, that freedom of speech and press from prior restraint is not absolutely unlimited. (See, *e.g., Kingsley Books, Inc. v. Brown* (1957), 354 U.S. 436, 441, 1 L. Ed. 2d 1469, 1474, 77 S. Ct.

1325, 1328; *City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 311.) There are legitimate State interests at stake in "stemming the tide of commercialized obscenity" including the interest of the public in the quality of life, the total community environment, the tone of commerce in city centers, and perhaps public safety itself. *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 57-58, 37 L. Ed. 2d 446, 457, 93 S. Ct. 2628, 2635.

In *Kingsley*, the Supreme Court upheld a New York statute authorizing the chief executive or legal officer of the municipality to maintain an action for an injunction against the sale and distribution of any written or printed matter of an indecent character. Comparing the statute which provided for an injunction to a criminal statute, the court found that, rather than subjecting the book seller to fear that the offer for sale of a book may, without warning, warrant criminal prosecution with the hazard of imprisonment, a civil procedure assures that such consequences will not occur unless the issued injunction is ignored. (*Kingsley Books, Inc. v. Brown* (1957), 354 U.S. 436, 442, 1 L. Ed. 2d 1469, 1474-75, 77 S. Ct. 1325, 1328.) The court concluded that the injunction procedure provided a less restrictive and narrower restraint. 354 U.S. 436, 444, 1 L. Ed. 2d 1469, 1475-76, 77 S. Ct. 1325, 1329.

In *Vance v. Universal Amusement Co.* (1980), 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156, the Supreme Court held that a Texas nuisance statute, when coupled with a Texas rule of civil procedure, authorized prior restraints of indefinite duration on the exhibition of motion pictures that had not been adjudicated to be obscene. The court stated that an exhibitor would be required to obey such an order pending review of its merits and would be subjected to contempt proceedings even if the film should ultimately be found to be nonobscene. Such prior restraints, in the court's opinion, would be more onerous and objectionable than the threat of criminal sanctions after a film has been shown, since nonobscenity would be a defense to any criminal prosecution. (445 U.S. 308, 316, 63 L. Ed. 2d 413, 420-21, 100 S. Ct. 1156, 1161-62.) The court, however, did not find that an injunction in the nature of a prior restraint was always prohibited. (See 445 U.S. 308, 317, 63 L. Ed. 2d 413, 421, 100 S. Ct. 1156, 1162, and 445 U.S. 308, 321, 63 L. Ed. 2d 413, 424, 100 S. Ct. 1156, 1164 (White, J., dissenting).) Here, nonobscenity would be a complete defense to contempt, and the procedural deficiency lacking in the Texas statute would not occur.

The Illinois Supreme Court held that an injunction issued by the trial court which restrained the defendants from presenting obscene

live exhibitions did not present a problem of prior restraint. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 311.) The court stated that, considering the evidence presented in the trial court, the applicable State statutes to which the trial court referred in its injunction order obviously are the obscenity provisions of the criminal code; the injunction does no more than order the defendants not to violate the laws against obscenity. The court continued: "Unlike the order in *Vance*, the defendants here could not be held in contempt unless it were shown that they staged a performance that was obscene. In short, the order did not touch protected expression. Any effect it could have produced relating to the first amendment was no greater than that produced by the obscenity provisions of the Criminal Code." 91 Ill. 2d 295, 311.

█ █ The State next maintains that the complaint sufficiently alleges that the criminal law is an inadequate remedy to prevent continuance of a common law nuisance. Specifically, the State asserts that the criminal law is ineffective in this case because: (1) many criminal charges have been brought against Sequoia's employees, including several instances of repeated charges against the same employee; (2) 9 of the charges filed have not resulted in the arrest of named defendants; and (3) 10 of the charges were dismissed by the trial court and were pending on appeal when the complaint was dismissed. Those 10 were later reversed and remanded for further proceedings by this court in *People v. Bailey* (1984), 125 Ill. App. 3d 346.

It is a principle of equity that an injunction will not issue except where there is no adequate remedy of law. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 312.) Although the criminality of the conduct is a relevant factor in determining whether an injunction should issue, the purpose of giving equity jurisdiction in a common law nuisance action is to offer remedies more complete than those available at law. (91 Ill. 2d 295, 313.) Equitable jurisdiction to abate public nuisances is said to be of "ancient origin," existing even where not conferred by statute, where the offender is amenable to the criminal law, and where no property rights are involved. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 303.) Obscenity is not a form of expression protected by the first amendment and, therefore, may be regulated. (91 Ill. 2d 295, 305.) Civil injunctive procedures constitute permissible means for regulating obscenity. (91 Ill. 2d 295, 305.) To consider a criminal remedy to be adequate, the remedy "must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540,

549, citing *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021.

■■ The Illinois Supreme Court has recognized that the criminal law can be ineffective in preventing the continuance of a nuisance. (*City of Chicago v. Cecola* (1979), 75 Ill. 2d 423 (maximum fine of $200 insufficient to deter defendants from maintaining establishments offering sexual massage); *Village of Spillertown v. Prewitt* (1961), 21 Ill. 2d 228 (defendant, having been arrested twice, claimed before village board he would continue strip mining despite imposition of fines under ordinance); *People ex rel. Kerner v. Huls* (1934), 355 Ill. 412 (criminal prosecution inadequate remedy where defendant's statements showed he would pay statutory penalties but still not submit his cattle for tuberculin tests); *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156 (numerous criminal convictions of keeper of brothel did not deter defendant from continuing the activity).) Further, when a criminal prosecution cannot prevent the continuance of a nuisance, an action in equity may be pursued to prevent the harm caused. *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699 (where the criminal code did not effectively prevent the nuisance of masturbatory practices, the trial court did not abuse its discretion in issuing an injunction to close defendant's massage and bath enterprise); *City of Chicago v. Larson* (1961), 31 Ill. App. 2d 450 (injunction barring defendants from interfering with the inspection of a building alleged to have been in violation of health and safety codes was upheld where the act complained of constituted a menace to the public health, safety or welfare, and where the enforcement of the criminal law was merely incidental to the relief sought).

In *City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, the supreme court held that an injunction which barred live obscene stage shows as common law nuisances must be reversed where it was not shown that criminal prosecution was an inadequate remedy for the harm caused. (91 Ill. 2d 295, 313.) The allegations that the defendants presented an allegedly obscene performance despite two previous arrests for similar performances within 60 days were insufficient factors to persuade the court to conclude that the legal remedy was inadequate. (91 Ill. 2d 295, 314.) The court found that the injunction issued within a few months of the first arrest and before criminal actions were completed was premature. (91 Ill. 2d 295, 315.) The court also found it significant that the city of Chicago did not contend that the conviction and imposition of penalties available under the criminal obscenity law would be ineffective to deter defendants' activities or that this was a case where there was a risk to public health

requiring expedited action. (91 Ill. 2d 295, 315.) The court ruled that although a common law nuisance action may hereafter be maintained against the defendants, at that time, the evidence did not disclose that criminal prosecution would be an inadequate remedy. 91 Ill. 2d 295, 315.

■ In the present case, the trial court ruled that the allegations in paragraphs 6 and 8 of the complaint were insufficient because they did "not recite the disposition of the [criminal] charges." However, after the trial court submitted its written order, count I, paragraph 6, of the complaint was amended by stipulation of the parties and with the court's approval. The stipulation states that the Kendall County State's Attorney's office had filed criminal charges in 10 cases for violations on Sequoia's premises which were dismissed by the trial court. All 10 of these cases were reversed and remanded on appeal. There are nine cases pending on motions of various kinds and seven pending where no arrests have been made. These 26 pending cases spanned the period from November 24, 1982, to January 23, 1984. In addition, count I contains other references relevant to the issue of whether the criminal law is an inadequate remedy. The allegations of paragraphs 6 through 12 state:

"6. That several employees of the defendant Sequois [sic] Books, Inc. have been charged with criminal offenses for exhibition, selling or offering for sale of said materials.

7. That the exhibition, sale and offering for sale has continued by the defendant, Sequoia Books, Inc. since July, 1982.

8. That the criminal law has not had any limiting effect upon said exhibition, sales or offering for sale.

9. That the continued exhibition *** constitutes a menace to the public welfare of the residents of Kendall County.

10. That irreparable injury will occur to the public of County of Kendall unless said exhibition, sales and offering for sale is enjoined.

11. That no adequate remedy at law exists for the People of the State.

12. That an injunction issued in these proceedings will prevent multiplicity of criminal actions."

The injunction requested in the prayer for relief is a more expansive remedy than the criminal penalties aimed at curbing obscenity under section 11—20 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 11—20). We find that the allegations of the complaint, as amended, are a sufficient statement of the inadequacy of the criminal law to require a hearing. "[W]here the enforcement of

the criminal law is merely incidental to the general relief sought and the acts complained against constitute a nuisance or danger to the public health and public welfare and a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity will *** grant the relief sought by injunction." *City of Chicago v. Larson* (1961), 31 Ill. App. 2d 450, 455, citing *People v. Huls* (1934), 355 Ill. 412, 417.

■ The final issue concerns the sufficiency of count II, which alleges that Sequoia permitted fellatio to occur on the bookstore premises. While no statute is pleaded, the parties and the court treated the complaint as being brought under section 1 *et seq.* of "An Act regarding places used for purposes of lewdness, assignation, or prostitution ***" (the Act) (Ill. Rev. Stat. 1981, ch. 100½, par. 1 *et seq.*).

Sequoia argues that the complaint was properly dismissed because the allegations do not state a cause of action for statutory public nuisance pursuant to the Act. To establish such a cause of action, Sequoia maintains the facts in the complaint must demonstrate the adult bookstore is presently being used "for purposes of lewdness, assignation, or prostitution." Sequoia further contends that the State's sole allegation that fellatio is permitted to occur is insufficient to declare the premises a public nuisance. Sequoia believes, without citation of authority, that in order to state a cause of action under the Act the complaint must allege: (1) who the participants are; (2) what consideration is involved; (3) where the activity occurs within the adult bookstore; (4) the number of occasions it occurred; and (5) whether the activity is presently occurring.

The trial court ruled that an injunction, as provided in the Act, would not be proper because the complaint did not clearly allege whether the fellatio was performed on a commercial basis.

Section 1 of the Act provides:

"That all buildings and apartments, and all places, and the fixtures and moveable contents thereof, used for purposes of lewdness, assignation, or prostitution, are hereby declared to be public nuisances, and may be abated as hereinafter provided. The owners, agents, and occupants of any such building or apartment, or of any such place shall be deemed guilty of maintaining a public nuisance, and may be enjoined as hereinafter provided." (Ill. Rev. Stat. 1981, ch. 100½, par. 1.)

The Act further provides that the State's Attorney of the county in which the nuisance exists may bring a suit "perpetually to enjoin all persons from maintaining or permitting such nuisance," and to enjoin the use of a building for any purpose for a period of one year. (Ill.

Rev. Stat. 1981, ch. 100½, par. 2.) The Act requires a verified petition, and, if a judge is satisfied that a nuisance exists, a temporary injunction may be issued pending a hearing on a permanent injunction. Ill. Rev. Stat. 1981, ch. 100½, par. 2.

Our first inquiry, therefore, must be whether the alleged conduct, fellatio, is covered by the Act under the terms "lewdness, assignation or prostitution." Prostitution is defined as deviate sexual conduct for money in section 11–14 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 11–14). Clearly, fellatio is the type of conduct that also is considered to be deviate sexual conduct covered by the Code. (See Ill. Rev. Stat. 1981, ch. 38, pars. 11–2, 11–9.) As stated, the term "prostitution," defined by the Code, must be for money. Here, there is no allegation of value, and, therefore, the alleged act cannot be covered under the term prostitution. It remains to be determined whether the Act proscribes the alleged conduct if it is not a commercial nature.

Webster's Third New International Dictionary defines assignation as "an appointment of time and place *** esp. for illicit sexual relations (Webster's Third New International Dictionary 132 (1971).) It is the use of premises regardless of whether there is commercialized vice. (*Rhodes v. State* (1945), 208 Ark. 1043, 1047-48, 189 S.W. 2d 379, 381.) In the context of literature and history, assignation is a thing apart from statutory prostitution. (*People v. Goldman* (1972), 7 Ill. App. 3d 253, 256 (Trapp, J., dissenting).) The use of the word "assignation," alone in the complaint, is not sufficient to plead this portion of the Act where there are no other allegations of fact to support that assignations have taken place on the premises.

Webster's Third New International Dictionary defines lewd as "BASE, EVIL, WICKED—used of persons and their conduct *** [S]exually unchaste or licentious: DISSOLUTE, LASCIVIOUS: [S]uggestive of or tending to moral looseness *** INDECENT, OBSCENE, SALACIOUS (Webster's Third New International Dictionary 1301 (1971). See also Black's Law Dictionary 1052 (4th ed. 1968).) We hold that permitting acts of fellatio on premises which are primarily open to the public for the sale of adult reading materials is "the use of the premises for lewdness" under the Act. Remaining is the question of whether the conduct must be for a thing of value.

Other States have endorsed enjoining improper acts pursuant to similar public nuisance statutes despite the absence of a showing that the acts were conducted on a commercial basis. In a case similar to the one herein, a virtually identical New York statute was applied to an adult bookstore which permitted patrons to commit lewd and ille-

gal acts on the premises without a showing or allegation of the commercial aspect of the acts. (*People ex rel. Arcara v. Cloud Books, Inc.* (1984), 101 A.D.2d 163, 475 N.Y.S.2d 173, *rev'd on other grounds* (1985), 65 N.Y.S.2d 324, 480 N.E.2d 1089, 491 N.Y.S.2d 307, *rev'd* (1986), 478 U.S. ___, 92 L. Ed. 2d 568, 106 S. Ct. 3172.) The court stated:

"While there is little precedent in New York for applying the Public Health Law to premises other than a house of prostitution [Citations], similar statutes in three other states have been broadly construed to be applicable to various premises other than houses of prostitution. In *State ex rel. Carroll v. Gatter*, 43 Wash. 2d 153, 160, 260 P.2d 360, the Supreme Court of Washington discussed the general applicability of its red light abatement statute:

\* \* \*

In *State ex rel. Wayne County Prosecuting Attorney v. Levenburg*, 406 Mich. 455, 280 N.W.2d 810, the Supreme Court of Michigan held that proof of numerous instances of accosting and soliciting for purposes of prostitution at a bar was sufficient to sustain a finding that the bar constituted a nuisance under Michigan's abatement act and was, hence, subject to abatement." 101 A.D.2d 163, 166-68, 475 N.Y.S.2d 173, 177.

In finding that the State had stated a cause of action pursuant to the statute, the court further remarked:

"The question of whether any given premises, including defendant's bookstore, is subject to title II of article 23 of the Public Health Law is necessarily a question of fact. Resolution of this question will depend upon the degree of illicit activity which plaintiff can prove occurred at the store.

\* \* \*

\* \* \*While it will not be necessary for the People to demonstrate that the sole, or even dominant, use of the premises is devoted to the illegality prohibited in the statute, the People will have to show a consistent pattern of conduct sufficient to prove that the premises are being employed for a proscribed use." 101 A.D.2d 163, 168, 475 N.Y.S.2d 173, 178.

And, the Supreme Court of Washington stated:

"The statute is not directed to the abatement of commercial eroticism—that is governed by the criminal statutes. It is directed to the abatement of premises which, by reason of sufficient happenings therein, have absorbed and taken the character of the acts committed, and have in fact become houses of lewd-

ness, assignation or prostitution.

But, the operator of such premises cannot escape the force of the abatement statute by calling the premises a "hotel", "apartment", "club", or giving it any name which purports to identify it as a place of lawful and legitimate business; nor can certain immunity be gained by showing mathematically that the principal business of the establishment is legitimate." *State ex rel. Carroll v. Gatter* (1953), 43 Wash. 2d 153, 160, 260 P.2d 360, 364.

In *State ex rel. Wayne County Prosecuting Attorney v. Levenburg* (1979), 406 Mich. 455, 280 N.W.2d 810, the Supreme Court of Michigan construed the word "assignation" to justify closing a tavern which permitted prostitutes to accost and solicit customers on the premises.

"The difficulty in interpreting the meaning of the statutory phrase, 'lewdness, assignation or prostitution' as used in this act, and determining its applicability to the facts before us, stems from dictum in *Diversified* which states that this statute '*** was intended to apply to houses of prostitution ***' and that lewdness and assignation are both synonymous with prostitution. We do not accept this dictum as controlling these cases." (406 Mich. 455, 463, 280 N.W.2d 810, 811.)

See also *People v. Adult World Bookstore* (1980), 108 Cal. App. 3d 404, 410, 166 Cal. Rptr. 519, 523.

Other Illinois appellate courts have held that the public nuisance act is aimed at prostitution, not obscenity, and that it must be of a commercial nature. (*People v. Movies, Inc.* (1971), 49 Ill. 2d 85, 87 (in *dictum*); *People ex rel. Difanis v. Futia* (1978), 56 Ill. App. 3d 920, 926; *People v. Goldman* (1972), 7 Ill. App. 3d 253, 255.) In *Goldman*, the majority found the words lewdness and assignation were, by the principle of *noscitur a sociis*, synonymous with prostitution. (7 Ill. App. 3d 253, 255.) In *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 704, "lewdness" had a broader meaning than "prostitution," but when considered together it meant sexual acts performed for money.

The meaning of lewdness, assignation or prostitution, however, is not restricted to its definition under the criminal code, when either common law or public nuisance is concerned. (*City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 303; *City of Chicago v. Cecola* (1979), 75 Ill. 2d 423, 428.) Moreover, our supreme court has not drawn such a narrow interpretation of the Act. In *Festival*, a case involving live commercial sex acts, the court concluded that such stage shows may be abated as common law public nuisances and that the

definition used in *Goldman* may be too restrictive. *City of Chicago v. Festival Theatre Corp.* (1982), 91 Ill. 2d 295, 301-303.

■■ We believe that the words of the statute should be given their common meaning and that commercialism need not be alleged or proved to enjoin the lewd public behavior of fellatio in a commercial establishment as is alleged here. To hold otherwise, in our opinion, would be to abandon the plain meaning of the words of the statute. There is nothing in the Act which indicates that it applies only to commercial prostitution. "The plain language of the statute announces three categories of nuisance, *i.e.,* the lewd or obscene designed to incite lust or depravity albeit without necessarily immediate contemporaneous instant sexual acts; assignation in the sense of illicit sex relations albeit without 'acts for money', and finally the statutory prostitution." *People v. Goldman* (1972), 7 Ill. App. 3d 253, 256 (Trapp, J., dissenting).

■■ The grant or denial of a motion to dismiss is generally within the sound discretion of the trial court; however, a motion to dismiss should not be granted if a good cause of action is stated. (*City of North Chicago v. North Chicago News, Inc.* (1982), 106 Ill. App. 3d 587, 594.) In considering a motion to dismiss, the complaint must be considered as a whole and allegations should neither be stricken nor the complaint dismissed for failure to state a cause of action, unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (106 Ill. App. 3d 587, 594.) We hold that count II states a cause of action upon which relief may be granted as provided in section 2 of the Act (Ill. Rev. Stat. 1981, ch. 100½, par. 2).

Accordingly, we reverse and remand the cause to the circuit court of Kendall County.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.