THE STATE, EX REL. REAR DOOR BOOKSTORE ET AL.,
*v.* TENTH DISTRICT COURT OF APPEALS.

THE STATE, EX REL. MILLER, PROS. ATTY., APPELLEE, *v.* REAR DOOR BOOKSTORE ET AL., APPELLANTS; DOE, LESSEE, ET AL.

[Cite as *State, ex rel. Rear Door Bookstore, v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354.]

(Nos. 90–1941 and 91–995—Submitted February 26, 1992—Decided April 8, 1992.)

*Eric P. Rotondo,* for relators in case No. 90–1941 and appellants in case No. 91–995.

*S. Michael Miller,* Prosecuting Attorney, *William J. Owen* and *Carol Hamilton O'Brien,* for respondent in case No. 90–1941 and appellee in case No. 91–995.

*Timothy A. Oliver,* Prosecuting Attorney, and *Carolyn A. Duvelius,* urging affirmance for *amicus curiae,* Ohio Prosecuting Attorneys Association.

### Case No. 91–995

The cause is affirmed on authority of the court of appeals' decision below, rendered March 21, 1991 and attached as an appendix to this opinion.

### Case No. 90–1941

The mandamus action is dismissed as moot.

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

### Appendix

McCORMAC, Judge.

Defendants-appellants, P & T Investors, Inc., d.b.a. Rear Door Bookstore, and G.J. Wenner, appeal from the judgment of the Franklin County Court of Common Pleas finding appellants' place of business a "public nuisance," as that term is defined in R.C. 3767.01, and ordering the closure of the Rear Door Bookstore for a period of one year from the date of the court's entry. The trial court also ordered that the personal property used in conducting the nuisance be removed and sold.

Appellants raise the following assignments of error:

"1. The trial court erred as a matter of law, and to the prejudice of the Appellants, in failing to dismiss the complaint on the grounds that the terms 'lewdness' and 'assignation' appearing in the state nuisance statute are unconstitutionally vague and overbroad, in violation of the due process clauses of the federal and Ohio constitutions.

"2. The trial court erred as a matter of law, and to the prejudice of the Appellants, in failing to adopt as definitions of 'lewdness' and 'assignation' herein, those definitions contained in the 1919 criminal statute: former General Code Sec. 13031–13 [sic 13031–14]; former Revised Code Sec. 2905.26.

"3. The trial court erred as a matter of law, and to the prejudice of the Appellants, in failing to construe the terms 'lewdness' and 'assignation' appearing in the state nuisance statute, as adjuncts or corollaries to prostitution, under rules of construction.

"4. The trial court erred as a matter of law, and to the prejudice of the Appellants, in refusing to grant the Appellants' motion to dismiss based upon free speech analysis of the facts and law of this case, under the federal and Ohio constitutions.

"5. The trial court erred as a matter of law, and to the prejudice of the Appellants, in overruling Appellants' motion to dismiss upon the grounds that the state nuisance statute is unconstitutionally vague relative to scienter,

culpability and frequency of occurrence; and any factual finding of the trial court upon those issues is contrary to the manifest weight of the evidence.

"6. The trial court erred as a matter of law, and to the prejudice of the Appellants, in failing to grant the Appellants' motion to suppress evidence.

"7. The trial court erred as a matter of law, and to the prejudice of the Appellants, in failing to limit its closure order to that distinct portion of the premises found to be the locus of nuisance activity."

From July 1989 through May 1990, after receiving numerous citizens' complaints regarding the sale of sexually explicit materials, investigators from the Franklin County Sheriff's Office repeatedly visited the Rear Door Bookstore. Once inside the bookstore, the investigators observed an arcade area consisting of several booths. Each booth contained a chair, a box of tissues, a wastebasket, and a monitor for viewing sexually explicit videos. The video monitors were operated by tokens purchased from a bookstore clerk.

On numerous occasions, the deputies retrieved used tissue paper from the floor and wastebaskets of the booths and, on at least two occasions, collected used condoms. Expert testimony was that there was semen on the tissues, and the testing of the condoms showed traces of both semen and epithelial cells indicative of their use during an act of sexual intercourse between a male and female. At one point in the investigation, the booths were observed with the aid of a blacklight which showed semen traces on the walls, seats, ceilings, and doors of the booths. On one occasion, detectives observed two male patrons in booths with the doors to both booths open. As the detectives passed these booths, the men exited and entered booths next to the booths taken by the detectives.

The detectives further reported the strong smell of urine present during one visit. Further testimony indicated that some of the booths had small "peep holes" drilled in the walls separating adjacent booths. These holes appeared to have been puttied over and later redrilled.

There was no evidence that the deputies had actually witnessed any sexual act and there are no allegations of obscenity regarding the videos shown in the booths.

Appellee, S. Michael Miller, Franklin County Prosecuting Attorney, commenced this action on December 18, 1989, pursuant to R.C. 3767.01 *et seq.* The complaint alleged that lewdness, assignation, or prostitution existed, or was permitted to exist, at the Rear Door Bookstore. After hearing evidence on and ultimately overruling appellants' motion to suppress, the trial court

heard evidence concerning appellee's application for temporary and permanent injunctions.

The trial court ultimately sustained appellee's motion for preliminary and permanent injunctions finding that the Rear Door Bookstore was a place in which lewdness, assignation, or prostitution was conducted, permitted, continued, or exists in violation of R.C. 3767.01 *et seq.* The trial court permanently enjoined appellants from further maintaining the nuisance at the existing location, or at any other location, and ordered the removal and sale of all personal property used in maintaining the nuisance. It is from this judgment that appellants now appeal.

By their first assignment of error, appellants argue that the terms "lewdness" and "assignation," as used in R.C. 3767.01, are unconstitutionally vague and overbroad. R.C. 3767.01(C) provides, in pertinent part:

" 'Nuisance' means that which is defined and declared by statutes to be such and also means any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists * * *."

The overbreath doctrine represents an exception to the usual rules applicable to standing. It permits a party to challenge a statute on its face when others not presently before the court may be affected by the statute's application. The overbreath doctrine applies only to First Amendment cases where the challenged law would have a "chilling effect" on constitutionally protected freedoms of speech. *Dombrowski v. Pfister* (1965), 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. If the statute represents a substantial prior restraint on free speech, then it may not be enforced against anyone unless it is narrowly tailored to prohibit only unprotected activity. *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830; *Brockett v. Spokane Arcades, Inc.* (1985), 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394.

The activity which resulted in the sanctions imposed against appellants does not involve First Amendment freedoms of speech or activity. The trial court's judgment was predicated upon sexual activity which was permitted to occur on the bookstore premises. That activity was not protected expression. The United States Supreme Court decided this issue in *Arcara v. Cloud Books, Inc.* (1986), 478 U.S. 697, 106 S.Ct. 3172, 92 L.Ed.2d 568. Citing *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, the court in *Arcara* stated at 478 U.S. at 705, 106 S.Ct. at 3176, 92 L.Ed.2d at 577:

" * * * [W]e underscored the fallacy of seeking to use the First Amendment as a cloak for obviously unlawful public sexual conduct by the diaphanous device of attributing protected expressive attributes to that conduct. First

Amendment values may not be invoked by merely linking the words 'sex' and 'books.' ' "

Therefore, since this action does not involve elements of protected speech, the overbreath doctrine is inapplicable.

The concept of vagueness, however, does apply to exercises of the state's police power in areas unprotected by First Amendment guarantees. The vagueness doctrine is founded on a " * * * rough idea of fairness * * *." *Colten v. Kentucky* (1972), 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590. It implies that a statute must be written so that a man of common intelligence can ascertain what conduct is prohibited, and that the law must provide sufficient standards to prevent arbitrary and discriminatory enforcement. *Connally v. General Construction Co.* (1926), 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214; *Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110.

However, a statute is not void for vagueness merely because it could have been more precisely worded. *Roth v. United States* (1957), 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. The legislature need not define every word of a statute. Words of ordinary usage will be given the meaning commonly attributed to them. *State v. Loless* (1986), 31 Ohio App.3d 5, 31 OBR 19, 507 N.E.2d 1140, citing *State v. Dorso* (1983), 4 Ohio St.3d 60, 4 OBR 150, 446 N.E.2d 449. Mathematical certainty is not required. " * * * The test is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. * * * " *Jordan v. De George* (1951), 341 U.S. 223, at 231–232, 71 S.Ct. 703, at 708, 95 L.Ed. 886, at 892. This principle is particularly applicable in a civil case where the state is granted wider latitude than may be applicable in a criminal case where the loss of one's liberty is at stake.

The terms "lewdness" and "assignation" are not legal terms of art but are words of common usage. Webster defines "lewd" as: " * * * sexually unchaste or licentious * * * lascivious * * * inciting to sensual desire or imagination * * *." Webster's Third New International Dictionary (1986) 1301. The Oxford English Dictionary gives a similar definition and cites Chaucer for first using the word in popular literature as early as 1386. "Lascivious" is defined by Webster as: " * * * inclined to lechery: lewd, lustful * * * tending to arouse sexual desire * * *." Webster's, *supra*, at 1274. The Oxford dictionary defines "lascivious" as: "[i]nclined to lust, lewd, wanton." The Oxford English Dictionary (1989) 666.

"Assignation" has been defined as: " * * * an appointment of time and place for a meeting esp. for illicit sexual relations. * * * " Webster's,

*supra*, at 132. The Random House Dictionary of the English Language (2 Ed. Unabridged 1987) 126, defines "assignation" as: " * * * an appointment for a meeting, esp. a lover's secret rendezvous. * * * " While lewd might be susceptible to more than one interpretation, the commonly ascribed definitions of assignation are clear and precise in their meaning. However, the problem with the evidence is that there was no direct proof or proof sufficient to infer beyond a reasonable doubt that the persons engaged in the activities had prearranged to meet there for that purpose. That is an essential element of assignation. The evidence equally supports the inference that like-minded persons were simply hanging out there and picking up someone on the spur of the moment.

Appellants argue that the dictionary definitions of "lewdness" are nothing more than a string of synonyms that add little to establishing a clear meaning for the term. While there may be some truth in appellants' argument when considered in a vacuum, the argument fails when the commonly accepted definitions of the words are considered in conjunction with the specific activities in this case and the discussion in controlling cases. The end result is that a meaning can be ascertained which puts a person of ordinary intelligence on notice of what actions are prohibited.

Our research indicates that twenty states have enacted statutes similar or identical to R.C. 3767.01. Each state declares a place in which "lewdness, assignation, or prostitution" occurs to be a nuisance susceptible to closure. The interpretations of these statutes by the various state courts have run the gamut from unconstitutional for vagueness, *State, ex rel Clemens, v. Toneca, Inc.* (Iowa 1978), 265 N.W.2d 909, to constitutional and understandable, *Commonwealth v. Croatan Books, Inc.* (1984), 228 Va. 383, 323 S.E.2d 86. Between these two extremes, the Massachusetts Supreme Court has held that the statute is not vague but that it is unconstitutional in that the one-year closure was mandatory, depriving the trial court, sitting in equity, of discretion in fashioning a remedy. *Commonwealth v. United Food Corp.* (1978), 374 Mass. 765, 374 N.E.2d 1331. After the United States Supreme Court held that the New York nuisance statute was constitutional in *Arcara v. Cloud Books, Inc.*, *supra*, the New York Court of Appeals held that its state constitution provided additional protections above and beyond the United States Constitution and applied its provisions to invalidate the statute. *People, ex rel. Arcara, v. Cloud Books, Inc.* (1986), 68 N.Y.2d 553, 510 N.Y.S.2d 492, 503 N.E.2d 492. In summary, decisions from our sister states can be cited to support almost any point of view. However, we believe that the better-reasoned, and probably the majority view, is that the terms used in R.C. 3767.01 are not unconstitutionally vague.

Our analysis begins with the assumption that legislative enactments are entitled to all reasonable presumptions, interpretations, and rules of construction consistent with the constitutionality of the statute. *State v. Dorso, supra.* This principle is especially applicable when the exercise of the state's police power in an area of civil law is at issue. The party who challenges the constitutionality of such a statute bears the burden of overcoming the presumption of constitutionality.

The common definitions of "lewd" clearly demonstrate that there are activities of a sexual nature which are beyond the limits of what society deems tolerable. We recognize this proposition is tempered by an established right of privacy which generally provides that what two consenting adults do in private is their own concern. *Paris Adult Theatre I v. Slaton, supra.* By necessary implication, R.C. 3767.01 may only be applied to instances of public activity which are unprotected. In *Arcara* and *Paris Adult Theatre I,* the United States Supreme Court held that the right of privacy does not apply to sexual activity in a commercial theatre or bookstore open to the public at large. Since there was evidence of peepholes between booths and patrons leaving doors open, presumably for their own voyeuristic gratification, or for the purpose of enticing a second participant, the right of privacy is equally inapplicable to this case. See *People v. Adult World Bookstore* (1980), 108 Cal.App.3d 404, 166 Cal.Rptr. 519.

In summary, we conclude that the term "lewdness" is not void for vagueness. The word describes a public sexual activity that is reprehensible or disgusting in nature. Its meaning is sufficiently clear to a person of average intelligence and its definition supplies ample guidance to prevent arbitrary and discriminatory enforcement.

It appears that appellants' primary contention is that a court or legislature cannot prescribe what activity falls below the line of social decency. However, R.C. 3767.01 *et seq.* represents an exercise of the state's police power for the purpose of protecting the health, safety, and morals of the public. The legislature clearly has the authority to legislate in the area of public morals which of necessity requires some line drawing. The fact that some exercise of discretion is involved in deciding the limits applicable does not cause the legislation to fail. Furthermore, the evidence in this case strongly suggests that the viewing booths not only were morally offensive in their use, but that they also represented a serious health hazard given the unsanitary condition of the booths. Therefore, R.C. 3767.01, as applied herein, goes beyond moral legislation, which in and of itself is a permissible area of regulation, and is directed at the health of patrons of an establishment open to the general adult public.

We would be remiss if we did not comment, at least in passing, on the United States Supreme Court's endorsement of the term "lewd." In the landmark case of *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, "lewd" was one of the phrases used to describe "prurient." Furthermore, the *Miller* court cited lewd behavior as an example of what a statute might regulate. *Id.* More recently, in *Osborne v. Ohio* (1990), 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98, the court upheld Ohio's statute which prohibited possession of photographs of minors containing lewd exhibition of nudity. The highest court of the land has, in effect, recognized that the term "lewd" is susceptible to common understanding.

Appellants' first assignment of error is overruled as the finding of assignation was not prejudicial.

Appellants secondly argue that the terms "lewd" and "assignation," used in R.C. 3767.01, should be given the same meaning as contained in a criminal statute passed two years later. Appellants then further suggest that the definitions in the criminal statute are also unconstitutional and offer an alternate method of construing those terms to arrive at a conclusion favorable to their position.

Under the first assignment of error, we found that there is a constitutionally sound definition for the terms "lewdness" and "assignation." We reject the convoluted reasoning advanced by appellants to arrive at a different conclusion.

Appellants' second assignment of error is overruled.

As a third alternative, appellants suggest that the rule of *noscitur a sociis* applies to the phrase "lewdness, assignation, or prostitution," thereby making the first two terms synonymous and complementary to the term "prostitution." Therefore, appellants argue that the only activity proscribed by R.C. 3767.01 is prostitution.

*Noscitur a sociis* is a rule of construction that states: where two or more words of analogous meaning are employed together in a statute, they are to be read in their cognate sense to express the same meaning. We perceive two flaws in this line of reasoning. Initially, we have already determined that the terms "lewdness" and "assignation" have meanings of their own separate and apart from the meaning of prostitution. The rule is thereby not applicable since the words used together are not of an analogous meaning. Secondly, the statute is written in the disjunctive by inserting the term "or."

We again refer to Webster where "disjunctive" is defined as: " * * * pleading or marked by mutually exclusive alternatives joined by 'or' * * *." Webster's, *supra,* at 651. The Ohio Supreme Court has defined the word "or"

as: " * * * a function word indicating an alternative between different or unlike things. * * * " *Pizza v. Sunset Fireworks Co.* (1986), 25 Ohio St.3d 1, at 4–5, 25 OBR 1, at 4, 494 N.E.2d 1115, at 1118. It must be presumed that the legislature was aware of the rules of grammar when R.C. 3767.01 was promulgated. By using the word "or," the legislature gave a separate and distinct identity to each of the articulated terms. A violation of R.C. 3767.01 can be sustained by finding an abridgement of any one of the three mutually exclusive terms.

Illinois, which has a statute identical to R.C. 3767.01, originally took the view that only prostitution was barred. *People v. Goldman* (1972), 7 Ill. App.3d 253, 287 N.E.2d 177. However, *Goldman* was subsequently eroded in *Chicago v. Festival Theatre Corp.* (1982), 91 Ill.2d 295, 63 Ill.Dec. 421, 438 N.E.2d 159, and ultimately abandoned in favor of the interpretation we now take. See *People v. Sequoia Books, Inc.* (1986), 149 Ill.App.3d 383, 102 Ill.Dec. 460, 500 N.E.2d 82.

Appellant's third assignment of error is overruled.

Appellants next argue that the trial court erred by failing to dismiss the action based upon an unconstitutional infringement of free speech. In support, appellants cite New York's final holding in *Arcara v. Cloud Books, Inc., supra.*

*Arcara* originated within the state court system of New York under that state's nuisance law, which is similar to R.C. 3767.01. The New York Court of Appeals found that the closure of the entire bookstore for activities which occurred in the arcade area violated free speech rights and, for that reason, struck down the New York statute. The United States Supreme Court reversed, holding that there was not a violation of the United States Constitution. *Arcara v. Cloud Books, Inc., supra.* On remand, the New York Court of Appeals held that the New York Constitution provided free speech guarantees above and beyond the federal Constitution and held that a less restrictive method of abating the nuisance was required.

We have previously expressed our opinion that the sexual activities, which gave rise to the nuisance complaint filed herein, contain no element of protected expression, a view in accord with the United States Supreme Court holding in *Arcara.* Appellants have cited no Ohio case, nor has our research discovered any authority, for the proposition that the free speech guarantees accorded by the Ohio Constitution are broader than those provided under the United States Constitution. We have no reluctance in declining to follow New York's dubious leadership to enlarge Ohio's constitutional protections to encompass the activities occurring within the Rear Door Bookstore.

Appellants' fourth assignment of error is overruled.

Appellants next contend that R.C. 3767.01 *et seq.* is unconstitutionally vague relative to scienter, culpability, and frequency-of-occurrence requirements. Continuing, appellants maintain that there was insufficient evidence establishing their knowledge to sustain the trial court's decision.

Appellants cite *State, ex rel. Ewing, v. Without a Stitch* (1974), 37 Ohio St.2d 95, 66 O.O.2d 223, 307 N.E.2d 911, for the proposition that knowledge is a necessary element of Ohio's nuisance statute. *Ewing* involved the showing of an allegedly obscene film which invoked the full panoply of First Amendment protections against prior restraint. In this case, no First Amendment rights are at issue; hence, *Ewing* has scant precedential value on the issue of scienter. While there is a line of cases embracing the notion that an establishment in which lewd activity occurs is a nuisance *per se,* we need not adopt that reasoning in this case. See *Harris v. United States* (C.A.D.C. 1974), 315 A.2d 569. Even if we assume that an injunction may not issue unless appellants knew of the existence of the nuisance, a contention we need not decide, we find that there was ample evidence to support the trial court's conclusion that appellants knew of the sexual activity occurring within the bookstore. See *Commonwealth v. United Food Corp., supra.*

In order to operate the movie projectors, tokens had to be purchased from a store employee; therefore, the employee knew the patron was about to use the arcade area. Appellee's expert testified that the semen stains found on the inside of the booths were visible to the naked eye. Appellants supplied tissues and a wastebasket in each booth and presumably, at some point in time, restocked the tissues and emptied the wastebaskets, thereby alerting the attendant to the presence of used tissues. The record, taken as a whole, supports a finding that there was sufficient circumstantial evidence to permit a reasonable inference of knowledge.

R.C. 3767.02 provides the standard for culpability by making the aiding or abetting of the nuisance actionable. The same evidence establishing scienter sufficiently establishes appellants' role in aiding and abetting the sexual activity occurring within the bookstore.

Lastly, appellants argue that there is no requirement concerning the frequency of occurrence of the proscribed behavior. Again, assuming, without deciding, that the conduct must occur with some degree of frequency, the evidence clearly establishes that the conduct permitted in appellants' bookstore was ongoing, not just an isolated event. Investigators observed evidence of sexual activity on at least eleven separate occasions occurring both before and after a temporary restraining order had been issued.

Appellants' fifth assignment of error is overruled.

By their sixth assignment of error, appellants argue that the seizure of the tissues and condoms from the video booths constituted a warrantless search in contravention of the Fourth Amendment. Both the condoms and tissues were found either in wastebaskets or on the floor of the video booths, which were part of a commercial establishment open to the public at large. The deputies who collected the samples entered the bookstore like any other paying customer.

The Fourth Amendment applies to searches and seizures. "* * * A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. * * *" *United States v. Jacobsen* (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94. In the present case, the undercover deputies entered a part of appellants' place of business that was open to any adult member of the public. In that situation, there can be no expectation of privacy on appellants' part and, therefore, a search in the constitutional sense did not occur. *Maryland v. Macon* (1985), 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370.

This same conclusion can be reached by applying the plain-view doctrine. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. Since no First Amendment rights attached to the video booth activity, the plain-view doctrine was free of the constraints the Supreme Court has associated with freedom of speech and searches and seizures. *Heller v. New York* (1973), 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745. The evidence found was within the plain view of anyone who entered the arcade area of the bookstore. The bookstore was a place open to the public and, therefore, the deputies made their observations from a place where they were legally permitted to be.

Finally, if the aforementioned bases were not sufficient to support the trial court's ruling, the fact that this is a civil action adds further credence to the overruling of appellants' motion. Generally, the exclusionary rule has not been applied in civil cases; we see no reason to expand the exclusionary rule to the facts of this case.

Appellants' sixth assignment of error is overruled.

Appellants finally contend that the trial court erred by ordering the closure of the entire bookstore and not the video booths only, since they were the focal point of the nuisance.

The evidence indicates that the operation was run as one unit. Patrons of the booth area had to first purchase tokens from the attendant in the retail area. If we treated the premises as separate units, we would be handling it

differently from the way that it was operated. We further note that the United States Supreme Court in *Arcara, supra,* permitted closure of the entire bookstore because of prohibited activities occurring within the booth arcade area. The court reasoned that, since the owners were free to sell their books at another location, no First Amendment right had been abridged. Under Ohio's nuisance statute, this reasoning is even more persuasive since appellants may petition the court of common pleas at a later time to permit the sale of books at the same location if the proper procedures are followed and if appellants adequately show that they have taken the steps necessary to permanently abate the nuisance.

Appellants' seventh assignment of error is overruled.

Appellants' assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, P.J., and WHITESIDE, J., concur.