The STATE ex rel. BOWERS, Pros. Atty., Appellee,

v.

ELIDA ROAD VIDEO & BOOKS, INC. et al., Appellants.

The STATE ex rel. BOWERS, Pros. Atty., Appellee,

v.

BEAVERDAM BOOKS & VIDEO, INC. et al., Appellants.

[Cite as *State ex rel. Bowers v. Elida Rd. Video & Books, Inc.* (1997), 120 Ohio App.3d 78.]

Court of Appeals of Ohio,
Third District, Allen County.

Nos. 1–96–79 and 1–96–80.

Decided June 17, 1997.

*David E. Bowers,* Allen County Prosecuting Attorney, and *Colleen P. Limerick,* Assistant Prosecuting Attorney, for appellee.

*Berkman, Gordon, Murray & Devan, J. Michael Murray* and *Jeremy A. Rosenbaum,* for appellants.

EVANS, Presiding Judge.

These are appeals by Elida Road Video & Books, Inc. et al. and Beaverdam Books & Video, Inc. et al. ("appellants") from judgments of the Court of Common Pleas of Allen County finding their places of business to be public nuisances pursuant to R.C. 3767.01 *et seq.*, and granting the request of the appellee for an injunctive order to cease operation of the video and book business.

Appellants are video and book stores featuring the rental and sale of sexually explicit materials. Also on each of the premises is a video arcade, consisting of enclosed booths that can be used by patrons for the purpose of viewing or previewing videos. Video players in the arcades are activated through use of tokens, which are available for purchase in the retail store areas. The arcades, separate rooms from the retail stores, are entered through curtained doorways embellished by festive blinking lights. It is clear from the evidence in the record that a retail customer could easily enter the bookstore and make purchases without entering the arcade, or, indeed, without even being able to see its darkened interior through the doorway.

On April 25, 1996, the Allen County Prosecutor, David Bowers, appellee, filed an action against appellants and their employees and owners, alleging that the businesses were public nuisances subject to abatement pursuant to R.C. Chapter 3767. Ohio's law of public nuisance provides for a civil action in equity seeking injunctive relief to abate a statutorily defined nuisance. R.C. Title 37, addressing health, safety, and morals, specifically allows the enjoining of the operation of "any place in or upon which lewdness, assignation, or prostitution is conducted, permitted, continued, or exists." R.C. 3767.01; 3767.02.

Appellee alleged in his complaints that lewdness occurred in the arcade booths in the form of masturbation during the viewing of videos by some of the arcade patrons. Over a period of several months, Allen County undercover agents had entered the premises and gathered evidence that indicated the presence of semen on the walls and floors of some of the video viewing booths. None of the officers reported having actually witnessed any sexual activity taking place in the arcades and/or the booths, or in the retail stores. In fact, both arcades displayed signs on every booth prohibiting sexual activity.

Along with each of his complaints requesting a permanent injunction, appellee requested an *ex parte* restraining order against removal or disposal of any personalty from the premises, which the court granted immediately, and a temporary injunction "enjoining the maintenance of the nuisance referred to in the Complaint." Appellee alleged that the entire premises of both businesses, including the retail adult-oriented bookstores, should be closed temporarily

because they were public nuisances in that lewdness, assignation, or prostitution was "conducted, continued, or exists on the premises."

Following the hearing required by R.C. 3767.04, the trial court granted appellee's requests for temporary injunctions. Then on September 30, 1996, based upon evidence adduced at the hearing, the court granted permanent injunctions against appellants' entire operations, pursuant to appellee's request.[1] The court found that "complete closure of the premises for all purposes" was justified because, in each case, the complete operation was "a nuisance within the meaning of R.C. 3767.01(C) as a place upon which lewdness is conducted and permitted." The respondent corporations and their agents, employees and officers, were permanently enjoined, pursuant to R.C. 3767.05(D), from maintaining the nuisances on the premises, and from "maintaining the same type of nuisance elsewhere." Pursuant to R.C. 3767.06(A), the court ordered "all personal property and contents" of the buildings removed for "safe keeping" and sale without appraisal by the Allen County Sheriff's department. Finally, the court enjoined use of the entire premises for any purpose by the respondent corporations for one year from the order, as provided in the statute, and taxed appellants each in the amount of $300, under R.C. 3767.08. The court, however, released the premises to Phyllis Hardy,[2] the "innocent" owner of both buildings, finding that she would be permitted to "conduct lawful activities upon the premises."

Appellants appealed the court's orders, asserting two assignments of error.

## FIRST ASSIGNMENT OF ERROR

"The trial court's interpretation and application of Chapter 3767 was contrary to law and the manifest weight of the evidence."

■ Appellants allege that the trial court failed to follow the "plain language" of the statute and the "dictates of due process and equity" by ordering temporary closure of their entire businesses when "ameliorative steps" would have abated the nuisances at issue. Appellants argue that the *ex parte* closure was ordered without appellee's having to show the need for a total restraining order. Appellants further contend that the nuisance (*i.e.*, the sexual activity occurring in the booths) could have been eliminated by simply removing the doors of the viewing

---

1. We note that there had been no allegation by appellee that lewd or improper behavior of any kind occurred in the retail sales area, nor was there evidence adduced of such at the hearing.

2. Phyllis Hardy is the owner of both parcels of real estate that house appellants' adult-oriented businesses. She leases the premises to appellants on a yearly basis, and testified at the hearing that she has no interest in or knowledge of the businesses conducted by appellants. Hardy also testified that she lives in Columbus, and has never visited or inspected the leased premises.

booths. We find, however, that the action taken by the trial court is provided for in R.C. 3767.04(B)(2), as long as notice of hearing is given at the time the *ex parte* restraining order is served. Furthermore, it is clear from the record that appellants had adequate notice of the relief requested by appellee, and of the rationale for the prosecutor's request. Moreover, the court could not know at the time of the prosecutor's original requests for relief how dependent the two ventures (*i.e.*, the sale of sexually explicit materials in the retail room of the building and the operation of the arcade) were upon one another, and whether the actual nuisance could be abated with less severe restraints. Appellants fail to specify how the trial court's *ex parte* order defies the nuisance statute, which has been declared to be constitutional in its entirety. The Ohio Supreme Court has expressly ruled these statutory provisions both constitutional and constitutional as applied to facts analogous to those of this case. See *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116. As an intermediate appellate court, we are obligated to defer to decisions of the Ohio Supreme Court, and therefore reject appellants' claim that the court's application of the statute, in granting the *ex parte* restraining orders and temporary injunctions, violated their constitutional and legal rights. When reviewing a trial court's decision to determine whether it is against the manifest weight of the evidence, we must be guided by the presumption that the findings of the trial court were correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. Further, a difference of opinion on the credibility of witnesses and the evidence is not grounds for reversal. *Seasons Coal Co.*, 10 Ohio St.3d at 80, 10 OBR at 410–411, 461 N.E.2d at 1276–1277. Thus, we find the *ex parte* and temporary orders to have been properly granted by the trial court.

■ Appellants further complain that there would have been no need for an *ex parte* order of closure if only they had been given fair notice that their businesses might constitute public health nuisances. This claim is without merit. Appellants essentially request this court to allow them to foster any actions on the business's premises as long as no one complains. Moreover, there is no evidence that "removing the doors from the viewing booths" would have abated the lewd behavior occurring on the premises, as argued by appellants. Our review of similar cases convinces us that it would be unlikely that all customers would be deterred from participating in lewd activity simply because they could be observed. See, *e.g., Arcara v. Cloud Books, Inc.* (1986), 478 U.S. 697, 699, 106 S.Ct. 3172, 3173–3174, 92 L.Ed.2d 568, 573 (deputy sheriff personally observed

masturbation, fondling, and fellatio by patrons); *State ex rel. Rear Door Bookstore*, 63 Ohio St.3d at 360, 588 N.E.2d at 122 (patrons left doors open "for their own voyeuristic gratification"); *State ex rel. Ward v. Lions Den* (June 4, 1993), Ross App. No. 1874, unreported, 1993 WL 191016 (officers posing as customers observed patrons masturbating and inserting erect penises through holes in partitions between booths); *State ex rel. Becker v. Lions Den Adult Book Store* (June 15, 1992), Licking App. No. 92–CA16, unreported, 1992 WL 155249 (persons masturbating could be observed upon entering the viewing areas of the store).

■ Appellants also contend that the trial court exceeded its authority by ordering closure and inventory of the entire premises, instead of merely ordering closure and inventory of the "property and contents situated in and used in conducting or maintaining the nuisance," as provided in R.C. 3767.04. However, as we stated above at the time the *ex parte* orders were requested, before evidence was heard by the trial court, there was no way of knowing precisely what was occurring to perpetuate the nuisance on appellants' premises. Moreover, R.C. 3767.04(B)(3) authorizes a trial court to "issue an order closing the place against its use for any purpose of lewdness, assignation, prostitution, or other prohibited conduct until final decision is rendered on the complaint for a permanent injunction." Further, it appears from the record that the personalty used solely in appellants' retail bookstore businesses was released to them. R.C. 3767.06(A) authorizes the removal and sale of "all personal property and contents used in conducting or maintaining the nuisance." Upon review of the record, we are convinced that the equipment and supplies specifically identified by the trial court were shown to have been used in the maintenance of the nuisance. Appellants have not identified any equipment that was removed from the premises and that was not used in conducting or maintaining the nuisance.

■ Next, appellants complain that they should not have been found liable for the actions of "some" disobedient patrons who "acted in an offensive manner." However, control and occupancy alone have been found sufficient to impose liability for maintaining a nuisance pursuant to R.C. Chapter 3767. *State ex rel. Miller v. Georgesville, Inc.* (Dec. 14, 1989), Franklin App. No. 89AP–588, unreported, 1989 WL 150826. Furthermore, it is clear from the record that appellants had knowledge of the lewd behavior of their patrons because the employees cleaned the booths' floors and walls regularly with disinfectants, and on more than one occasion, appellee's undercover agents received suggestions from appellants' employees to take precautions against intrusions on their privacy, etc., when utilizing the booths.

■ Finally, appellants argue:

"The trial court's finding of a nuisance was contrary to law and against the manifest weight of the evidence where allegations and proof of patrons engaging in masturbation within enclosed viewing booths in the arcade area [of] a business does not constitute 'lewdness.'"

Appellants essentially claim that the trial court erred in finding that the masturbation occurring in the video booths was public sexual behavior, because it occurred behind closed-in partitions, which were not public. We disagree with appellants' claim. Black's Law Dictionary (6 Ed.1990) 1230, defines "public place" as "a place to which the general public has a right to resort; * * * a place in which the public has an interest as affecting the safety, health, morals, and welfare of the community." Surely a book and video store with an "arcade" falls under the foregoing definition. Moreover, the Ohio Supreme Court has specifically found that when sexual activity occurs in a place where no right of privacy exists, as in a bookstore or theater open to the public, the activity is "lewd" pursuant to R.C. 3767.01 *et seq. State ex rel. Rear Door Bookstore*, 63 Ohio St.3d at 360, 588 N.E.2d at 122. Accordingly, appellants' first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

"The trial court erred in failing to dismiss the complaint and upholding the constitutionality of Chapter 3767, where the statutory scheme,. as applied, does not provide the least restrictive means to regulate conduct which has a significant expressive element but, rather, authorizes a blatant and unconstitutional prior restraint upon the dissemination of protected speech."

Appellants contend that the trial court's inclusion in the closure order of their retail bookstores along with the arcades was an unconstitutional intrusion on their First Amendment right to free speech. Appellants have maintained throughout these proceedings that "the filing and prosecution of the actions were done as a pretext to obtain the suppression of the sexually explicit speech disseminated at the stores." As stated by the Court of Appeals for the Fifth District, "[t]he [United States] Supreme Court has warned courts to be vigilant against such pretextual use of nuisance statutes to violate First Amendment rights." *State ex rel. Konstam v. Video Visions, Inc.* (Apr. 28, 1994), Richland App. No. 93–CA–38, unreported, 1994 WL 167925, citing *Arcara v. Cloud Books*, 478 U.S. at 707-708, 106 S.Ct. at 3177–3178, 92 L.Ed.2d at 578–579.

■ We agree with appellants' assessment of the circumstances. Appellee in this case has not alleged, either in his complaints or in the hearing, that appellants' retail book and video stores are themselves nuisances. Notably, appellee has not alleged, nor was it demonstrated on the record, that any of the

lewd arcade activity was observable from the bookstores, or that any sexual activity ever took place in the retail bookstore areas.[3] Indeed, the only connection alleged between the two separate areas of the businesses was that customers purchased their arcade tokens in the retail areas before entering the arcades. Furthermore, although the materials sold by appellants are sexually oriented in nature, the materials have not been labeled or adjudicated as "obscene." "Communication concerning sex is protected speech under the Ohio and United States Constitutions unless that communication meets the legal standard of obscenity. The definition of obscenity is a question of law and a legal term of art." *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 114, 539 N.E.2d 140, 145–146, citing *Hamling v. United States* (1974), 418 U.S. 87, 118, 94 S.Ct. 2887, 2908, 41 L.Ed.2d 590, 621; see, also, *Fort Wayne Books, Inc. v. Indiana* (1989), 489 U.S. 46, 63, 109 S.Ct. 916, 927–928, 103 L.Ed.2d 34, 51–52 (publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing). Therefore, unless and until the bookstores at issue have been determined to be disseminating information unprotected by the First Amendment, they may not be "bootstrapped" to an order of closure as civil nuisances *per se* unless they are proven to be actual nuisances themselves pursuant to R.C. 3767.01 *et seq.* See *United States v. O'Brien* (1968), 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (state must have a compelling reason to prohibit constitutionally protected expression when it is combined with non-speech in a course of conduct).

Although we agree with the trial court's conclusion that appellants' arcades constitute public nuisances pursuant to statutory proscriptions and common law, we find that abatement of the nuisances *in this case* could have been accomplished by the less restrictive means of issuing permanent injunctions against conducting the arcade businesses only. Nuisance is defined by the statute itself as "any place in or upon which lewdness * * * is conducted, permitted, continued, or exists," and " 'place' includes any building, * * * *or any separate part or portion thereof.*" (Emphasis added). R.C. 3767.01(A) and (B). Thus, the statute itself provides for separation of a "part" or a "portion" of a place for injunctive purposes. In *Konstam, supra,* which is analogous to this case, the trial court fashioned a remedy which effectively abated the complained-of nuisance without infringing upon First Amendment rights by closing down the arcade portion of

---

3. Cf. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116. Although the Supreme Court in that case found forced closure of the bookstore permissible, we note that the *Rear Door* opinion does not disclose whether the two operations were physically separable. In this case, however, the arcades and bookstore areas were clearly separate rooms, entered only through narrow doorways and easily closed off from one another.

the business only. In affirming the trial court's order of abatement, the *Konstam* court noted as follows:

"We commend the trial court in its effort to tailor an effective remedy that would have the least restrictive effect on the dissemination of First Amendment protected material but would abate the non-expressive sexual activity carried on in appellants' business. The trial court's order abating the nuisance did not order Video Visions to close its entire business. The order did not limit appellants' right to continue to sell, rent or otherwise distribute its sexually explicit books, magazines and video tapes. The order does not require appellants to remove all of their video booths. Instead, the order merely closes the video portion of the bookstore, which portion was designed and operated in such a manner as to induce and/or permit its customers to engage in sexual activity that constituted the public nuisance. Appellants claim less restrictive means were available which would have had a lessor [*sic*] effect on their First Amendment freedoms. One such example was the removal of the doors from each video booth. We believe the layout of this store would preclude such a remedy from effectively abating the nuisance. While it is true that other remedies do exist, we believe the one fashioned by the trial court is the most effective means of abating the nuisance and has little effect on appellants' First Amendment freedoms."

Accordingly, we find that, although the lewd conduct taking place in the arcade areas cannot be found to be expressive conduct protected by the Constitution, appellants' right to disseminate materials possibly constitutionally protected must remain intact if the activities can be separated and conducted exclusive of each other. Operation of the arcades has been properly enjoined throughout these proceedings. However, we conclude that the issuance of permanent injunctions against operation of appellants' retail businesses was unsupported by the evidence in the record, and thus was an abuse of the trial court's discretion. See *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 59 O.O. 151, 133 N.E.2d 595 (appellate court's standard of review regarding the granting of an injunction by a trial court is whether the trial court abused its discretion). Appellants' second assignment of error is sustained in part, in that the court's action, taken "under color" of the Ohio nuisance law, impermissibly burdens appellants' First Amendment right to disseminate information yet to be found unprotected by the United States and Ohio Constitutions.

Having found error prejudicial to the appellants herein, in the particulars assigned and argued, we reverse that part of the trial court's orders that permanently enjoins appellants from conducting their retail book and video sales businesses and ordering the retail portions of the businesses closed until September 30, 1997. We affirm the judgments of the trial court that (1) permanently enjoin appellants from maintaining their video arcade nuisances at their present

locations or maintaining the same type of nuisances elsewhere, (2) impose a $300 tax pursuant to R.C. 3767.08 against appellants for maintaining the arcade nuisances, (3) order the safekeeping and sale of the personal property used in maintenance of the arcade nuisances, and (4) release the premises to the "innocent" owner of the real estate to conduct lawful activities of her choosing on the premises. We remand the cause to the trial court with instructions to vacate that portion of the judgment enjoining the operation of appellants' video and book retail sales businesses.

*Judgment accordingly.*

THOMAS F. BRYANT and HADLEY, JJ., concur.