DRISCOLL, Appellee and Cross-Appellant,

v.

NORPROP, INC. et al., Appellants and Cross–Appellees.

[Cite as *Driscoll v. NorProp, Inc.* (1998), 129 Ohio App.3d 757.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 72479.

Decided Sept. 14, 1998.

758

*Martindale, Brzytwa & Quick* and *Jeffery A. Key,* for appellee and cross–appellant.

*Joondeph & Shaffer, Timothy M. Bittel* and *Thomas P. Kelly,* for appellants and cross–appellees NorProp, Inc. and Cort Shoe Associates.

*George J. Saad,* for appellant and cross–appellee Westlake Office Park Partnership.

---

BLACKMON, Administrative Judge.

Defendants-appellants NorProp, Inc., Westlake Office Park Partnership ("Westlake"), and Cort Shoe Associates Limited Partnership ("Cort Shoe") appeal a judgment by the trial court in favor of plaintiff-appellee James Driscoll in his action for a real estate sales commission. NorProp, Westlake, and Cort Shoe assign the following five errors for our review:

"I. The trial court erred to the prejudice of each defendant when it denied each defendant's motion for directed verdict.

"II. The trial court erred to the prejudice of each defendant when it denied each defendant's motion for judgment notwithstanding the verdict or, alternatively, motion for new trial.

"III. The trial court erred to the prejudice of defendant Westlake Office Park Partnership by instructing the jury regarding 'earned brokerage fee,' based upon *Carey v. Conn* (1923), 107 Ohio St. 113, 140 N.E. 643.

"IV. The jury's verdicts were against the manifest weight of the evidence.

"V. The trial court erred to the prejudice of each defendant by awarding prejudgment interest."

In his cross-appeal, Driscoll assigns the following error for our review:

"The trial court erred in not granting plaintiff's motion for a limited new trial on the issue of the amount of damages recoverable against defendant Westlake Office Park Partnership."

Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.

In April 1992, James Driscoll began his employment at NorProp, Inc., a real estate acquisition company operated by James Carney, John Carney, Bob Rains, and Jon Newton. Driscoll's job responsibilities included securing leases and managing space in several area shopping centers. Driscoll also secured leases for the Cort Shoe Building, a former warehouse that had been renovated into apartments and a limited amount of space for commercial tenants.

Driscoll started work under an oral contract, but in September 1992, Bob Rains asked Driscoll to write a letter indicating Driscoll's understanding of his job responsibilities. In a September 28, 1992 letter to Rains, Driscoll stated his understanding that he was to be paid an annual salary of $24,000 payable in twelve monthly installments of $2,000 each. He also wrote that the commissions on real estate transactions were to be six percent. The commissions were to be split equally between Driscoll and NorProp until the commissions equaled his salary. Thereafter, Driscoll's share would increase to two-thirds. The contract also provided that if his employment with NorProp was terminated, Driscoll was to receive commissions earned on deals that closed within six months of his termination. The letter also stated that Driscoll's real estate license was in escrow.

In July 1992, Driscoll obtained information that Kaiser Foundation Health Plan of Ohio ("Kaiser") was looking for a site for its corporate headquarters. Driscoll contacted Kaiser and suggested they consider property located in Westlake Office

Park. Driscoll began negotiations with Kaiser for the purchase of the Westlake Office Park property and conducted several meetings with Kaiser officials regarding the property.

In June 1993, Driscoll wrote a letter to Rains of NorProp requesting a pay increase and a $10,000 bonus for his work on the Cort Shoe Building. Driscoll asked Rains to sign the letter if he approved of the proposed agreement. However, the letter was never signed, and, in September 1993, Driscoll's employment was terminated.

On September 15, 1993, Driscoll sent a letter to James and John Carney in which he proposed that Driscoll would receive a six percent commission if a lease or purchase was transacted between Westlake and Kaiser. This proposed agreement was not signed.

In January 1994, Carney contacted Driscoll and asked him to help with the Kaiser deal. Thereafter, Driscoll contacted officials from Kaiser in an attempt to persuade Kaiser to purchase the Westlake Office Park property.

On April 26, 1994, Driscoll filed suit against NorProp, 1500 Management Company, Westlake, Cort Shoe, and various other companies, alleging that the defendants failed to pay compensation, commissions, and bonus funds that were owed to him. He argued that NorProp failed to pay promised commissions on the pending Kaiser sale and the Cort Shoe Building transaction. He also brought claims of (1) breach of contract, (2) breach of implied contract, (3) unjust enrichment, and (4) intentional misrepresentation, and sought an accounting of all transactions related to Driscoll and/or his efforts. He requested $108,600 in compensatory damages and $200,000 in punitive damages.

In their answer to the complaint, the defendants argued that, under R.C. 4735.21, Driscoll was not entitled to receive any commissions because he was not a licensed real estate broker. R.C. 4735.21 provides:

"No right of action shall accrue to any person * * * for the collection of compensation for the performance of [real estate transactions], without alleging and proving that such person * * * was licensed as a real estate broker or foreign real estate dealer."

Driscoll responded that he was entitled to commissions under R.C. 4735.01(K), which provides that a regular employee of a partnership, association, or corporation is excepted from the licensure requirements for real estate transactions involving real estate owned by the partnership, association, or corporation.

On June 28, 1994, Kaiser signed a purchase agreement for the Westlake Office Park property for $1,550,000. However, the agreement gave Kaiser the option to cancel the agreement upon written notice to Westlake within a limited time. On

October 31, 1995, Kaiser exercised its option and canceled the contract. However, Westlake retained the $50,000 deposit paid by Kaiser.

Driscoll's case went to trial on March 13, 1996 on his breach-of-express-contract claim against NorProp and Cort Shoe and on his breach-of-implied-contract claim against Westlake.

The jury found that Driscoll was a regular employee of Cort Shoe and of Westlake. Driscoll was awarded $33,500 in damages from Westlake, $10,000 from Cort Shoe, and $24,800 from NorProp. NorProp, Cort Shoe, and Westlake filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. Driscoll filed a motion for *additur* or, alternatively, for a new trial on the issue of damages due from Westlake. Both motions were denied. On June 26, 1996, Driscoll filed a motion for prejudgment interest. The defendants' appeal to this court was dismissed for lack of a final appealable order because the trial court had yet to rule on the motion. *Driscoll v. Norprop, Inc.*, (Apr. 3, 1997), Cuyahoga App. No. 70891, unreported, 1997 WL 156701. The motion for prejudgment interest was later granted by the trial court. This appeal followed.

In their first and second assignments of error, NorProp, Westlake, and Cort Shoe challenge the trial court's denial of their motions for directed verdict, judgment notwithstanding the verdict or, alternatively, for a new trial. When reviewing a motion for directed verdict or a motion for judgment notwithstanding the verdict, the standard to be applied is the same; either motion should be granted when the trial court, construing the evidence most strongly in favor of the nonmovant, concludes that " 'upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' " *Mantua Mfg. Co. v. Commerce Exchange Bank* (1996), 75 Ohio St.3d 1, 4, 661 N.E.2d 161, 164, quoting Civ.R. 50(A)(4); *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 435, 659 N.E.2d 1232, 1239. See, also, *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 124, 671 N.E.2d 252, 258–259.

In this case, it is undisputed that the individual owners of NorProp also had interests in Cort Shoe and Westlake. The companies shared the same office space. Though Driscoll was hired by NorProp, the evidence revealed that his paychecks were from 1500 Management Company, an entity owned by the same principals as NorProp and sharing the same business address as NorProp, Westlake, and Cort Shoe.

James Carney testified that Driscoll was hired with the intent that he would work for Cort Shoe and Westlake:

"[W]e needed one entity that we could use for hiring [Driscoll] that would then allow him to work for other companies that we were partners in and managing."

Carney also testified that Driscoll was expected to work wherever he was told to work. Robert Rains testified that he had Driscoll seek potential leases for the Cort Shoe development and that NorProp received leasing commissions from Cort Shoe. Driscoll testified that he was expected to work on selling land in Westlake Office Park.

Construing this evidence most strongly in favor of Driscoll, we conclude that a reasonable juror could find that Driscoll was a "regular employee" of Cort Shoe and Westlake. Accordingly, the trial court properly denied the motions for directed verdict and for judgment notwithstanding the verdict.

■ With respect to the motion for new trial, we must apply an abuse-of-discretion standard. *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242, 1248–1249; *Sharp v. Norfolk & W. Ry. Co.* (1995), 72 Ohio St.3d 307, 312, 649 N.E.2d 1219, 1223; *Payne v. Cartee* (1996), 111 Ohio App.3d 580, 593, 676 N.E.2d 946, 954–955. Abuse of discretion has been defined as follows:

" '[A] discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.' * * *. Where the court does not exercise a discretion in the sense of being discreet, circumspect, [and] prudent and exercising cautious judgment, there is an abuse of discretion." (Additional quotation marks deleted.) *Davis v. Immediate Med. Serv., Inc.* (1997), 80 Ohio St.3d 10, 21, 684 N.E.2d 292, 301 (Lundberg Stratton, J., dissenting), citing *State ex rel. Shafer v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 591, 50 O.O. 465, 469–470, 113 N.E.2d 14, 19–20.

In light of the above-outlined evidence presented at trial that supports the jury verdict, we conclude that the trial court did not abuse its discretion in denying the motion for new trial. Appellants' first and second assignments of error are overruled.

■ In their third assignment of error, NorProp, Westlake, and Cort Shoe argue that the trial court erred by instructing the jury about an "earned brokerage fee." In its jury instructions, the trial court gave the following instruction to the jury:

"If you determine that an implied contract existed between Driscoll and Westlake Office Park Partnership to find a buyer, then you must determine whether Driscoll procured a buyer who was ready, willing and able to sign a real estate purchase contract on the seller's specified terms.

"If you find that Driscoll procured Kaiser Foundation Health Plan of Ohio as purchaser for the property owned by Westlake Office Park Partnership, and that Kaiser Foundation signed a contract on terms agreeable to the seller, Westlake

Office Park Partnership, then you must find that Driscoll's compensation was earned.

"Whatever infirmities arose out of the contract between Westlake Office Park Partnership and Kaiser Foundation subsequent to the execution of said contract does not prejudice Driscoll's right to recover, since you will have found that he fulfilled his obligation to find a buyer."

The instruction was based on the case of *Carey v. Conn* (1923), 107 Ohio St. 113, 140 N.E. 643. In *Carey*, the Ohio Supreme Court held that a real estate agent or broker who makes a contract with a property owner to find a buyer for real estate at a specified commission and then produces a buyer is, absent fraud, entitled to the commission for his services. See *id.* at paragraph one of the syllabus.

The defendants repeat the argument that because Driscoll was not a licensed real estate broker, he was not entitled to a commission of the sale of the Westlake property. As discussed above, because Driscoll was properly found to be a regular employee of Westlake, his lack of a valid real estate license does not bar him from receiving a commission.

Defendants also argue, without benefit of authority, that the contract was not valid or enforceable because it gave Kaiser the option to cancel the contract. We disagree. It has been held that when the contract as a whole is supported by consideration, a reservation of the right to cancel the contract on notice does not make the contract unenforceable because the party reserving the right to cancel is bound to perform unless and until such notice is given. See *Sun Refining & Marketing Co. v. Spelman* (Dec. 17, 1992), Cuyahoga App. No. 63164, unreported, 1992 WL 390216, at *4 ("An option, after all, is nothing but an enforceable promise that limits an offeror's power to revoke the offer. It is, therefore, the acceptance of consideration by the offeror in exchange for his promise to keep the offer open for a designated period of time, that renders the offer irrevocable."). In this case, the purchase agreement between Westlake and Kaiser was supported by valid consideration – the earnest money paid by Kaiser. Consequently, Kaiser was under a valid and enforceable contractual obligation to purchase the property up until the time the option was exercised. The trial court's instruction was correct. Defendants' third assignment of error is without merit.

In their fourth assignment of error, NorProp, Westlake, and Cort Shoe argue that the jury's verdicts were against the manifest weight of the evidence. It is well settled that judgments supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *Ritchhart v. Gleason* (1996), 109 Ohio App.3d 652, 656, 672 N.E.2d 1064, 1066–1067; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279,

280, 8 O.O.3d 261, 262, 376 N.E.2d 578, 579. A case should not be reversed because we may have different opinions about the credibility of the witnesses and the evidence. See *State ex rel. Bowers v. Elida Rd. Video & Books, Inc.* (1997), 120 Ohio App.3d 78, 696 N.E.2d 668. Instead, a reviewing court should defer to the trial court's findings since the trial court is best able to observe the witnesses and weigh their credibility. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277.

As discussed in our resolution of appellants' first and second assignments of error, Driscoll presented competent and credible evidence to support each of his claims. Although NorProp, Cort Shoe, and Westlake presented a different version of the relevant events from that presented by Driscoll, we conclude that the jury reasonably resolved the conflicting testimony. Accordingly, we defer to the jury's decision and overrule the fourth assignment of error.

In their fifth assignment of error, NorProp, Westlake, and Cort Shoe argue that the trial court erred by awarding Driscoll prejudgment interest. Their argument in support of this assignment of error is limited to a contention that Driscoll's motion for prejudgment interest was untimely filed. They cite *Cotterman v. Cleveland Elec. Illum. Co.* (1987), 34 Ohio St.3d 48, 517 N.E.2d 536, in which the court held that, in a tort action, a motion for prejudgment interest filed under R.C. 1343.03(C) must. be filed within two weeks of the entry of final judgment. However, appellants have provided us with no support for their argument that the two-week rule of *Cotterman* should be extended to motions for prejudgment interest filed in contract actions such as the one before us. Accordingly, we decline to extend *Cotterman* to contract actions. See *Schulman v. Wolske & Blue Co., L.P.A.* (1998), 125 Ohio App.3d 365, 708 N.E.2d 753. NorProp, Westlake, and Cort Shoe's fifth assignment of error is without merit.

We now turn to Driscoll's cross-assignment of error, in which he argues that the trial court erroneously denied his motion for a limited new trial on the issue of the amount of damages recoverable against Westlake. As discussed above, the trial court's decision on a motion for a new trial must be upheld unless it is shown that the trial court abused its discretion. See *Malone, supra; Eagle Am. Ins. Co. v. Frencho* (1996), 111 Ohio App.3d 213, 218, 675 N.E.2d 1312, 1315–1316; *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group, Inc.* (1996), 109 Ohio App.3d 312, 325, 672 N.E.2d 184, 192–193. Driscoll argues that the jury's damage award was inadequate and was the result of either improper calculation or the jury's failure to consider an element of damages.

A reviewing court may not set aside a damage award as inadequate and against the manifest weight of the evidence unless it determines that the verdict is " 'so gross as to shock the sense of justice and fairness, cannot be reconciled

with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim.'" *Iames v. Murphy* (1995), 106 Ohio App.3d 627, 631, 666 N.E.2d 1147, 1149, quoting *Bailey v. Allberry* (1993), 88 Ohio App.3d 432, 435, 624 N.E.2d 279, 280–281. See also *Pena v. Northeast Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 104, 670 N.E.2d 268, 273–274.

Driscoll argues that the jury's award of damages in the amount of $33,500 from Westlake was unsupported by any evidence in the record. He argues that the uncontradicted evidence was that the total commission on the Kaiser contract was $93,000, which represented six percent of the 1.55 million dollar purchase price. He maintains he was entitled to sixty-seven percent of the $93,000 or $62,310. However, the jury also heard testimony from John Carney that because Kaiser backed out of the deal, Westlake never received the 1.55 million dollars but kept Kaiser's $50,000 deposit. The jury's verdict of $33,500 represents sixty-seven percent of that $50,000. In light of the fact that the 1.55 million dollar purchase price was never paid, the jury could reasonably have decided to use the $50,000 as the total amount of available commission on the transaction and calculated Driscoll's portion of the commission by taking sixty-seven percent of the $50,000.

In reviewing the motion for new trial, the trial court had to abstain from disturbing the verdict unless it determined that the jury's damage assessment was "so overwhelmingly disproportionate as to shock reasonable sensibilities." *Pena*, 108 Ohio App.3d at 104, 670 N.E.2d at 273. In light of all the evidence presented, there is no evidence that the jury's verdict was the result of passion or prejudice as contemplated by Civ.R. 59(A)(4). Accordingly, the trial court did not abuse its discretion in denying the motion for limited new trial. Driscoll's cross-assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KARPINSKI and SPELLACY, JJ., concur.